## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| PATTON BOGGS LLP, | : | Civil Action No. 12-901 (ES)(CLW) |
|  | : |  |
| Plaintiff, | : | **REPORT & RECOMMENDATION** |
|  | : |  |
| v. | : | **July 18, 2012** |
|  | : |  |
| CHEVRON CORPORATION, | : |  |
|  | : |  |
| Defendant. | : |  |

**WALDOR, UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Chevron Corporation's ("Defendant" or "Chevron") motion to transfer this action to the Southern District of New York.  (Docket Entry No. 7, "Motion to Transfer").  Plaintiff Patton Boggs LLP ("Plaintiff" or "Patton Boggs") opposed the Motion to Transfer.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  This Report and Recommendation is issued pursuant to 28 U.S.C. § 636 (b)(1)(B).  For the reasons stated below, the Court respectfully recommends that Chevron's Motion to Transfer be **GRANTED**.

I.      Background

The Court provides background only as to the present dispute between the parties and accepts the factual allegations in Plaintiff's complaint and amended complaint as true for purposes of the instant motion.  This case has a complex, lengthy, and internationally sprawling history.  For the past 18 years, a coalition of indigenous Ecuadorian groups (commonly referred to as the "Afectados") has litigated against Chevron in an effort to hold Chevron liable for environmental harm caused in the Ecuadorian Amazon basin between roughly 1964 and 1990.

(Docket Entry No. 1, Complaint ("Compl.") at ¶ 1).  Patton Boggs has provided legal representation to the Afectados since 2010.  (Id. at ¶ 2).

In 1993, the Afectados first filed suit against Texaco in the Southern District of New York.  (Id. at ¶ 3).  In 2002, Chevron, Texaco's successor, obtained a *forum non conveniens* dismissal.  (Id. at ¶ 4).  In 2003, the case was re-filed as a "popular action" in the Provincial Court of Sucumbíos in Lago Agrio, Eduador.  (Id. at ¶ 5).  In February 2011, the Ecuadorian court rendered a multibillion dollar judgment against Chevron.  Chevron has appealed that judgment and, additionally, has sued in tribunals around the world to prevent its enforcement. (Id. at ¶¶ 5, 6).  See Chevron Corp. v. Donziger, 768 F.Supp.2d 581 (S.D.N.Y. 2011).

To aid its prevention efforts, Chevron filed twenty 28 U.S.C. § 1782 proceedings around the country between December 2009 and February 2011.  (Compl. at ¶ 8).  Section 1782 authorizes federal district courts to compel discovery for use in foreign litigation.   The Honorable Lewis Kaplan of the United States District Court for the Southern District of New York presided over two § 1782 proceedings.  (Id. at ¶ 13).

Thereafter, on February 1, 2011, Chevron filed a complaint in the Southern District of New York against the Afectados, their environmental consultants, and their legal representatives, alleging that the Ecuadorian judgment was the product of fraud.  (Id. at ¶ 14).  Chevron asserted that said fraud was part of a larger scheme on behalf of the Afectados - and those who aid the Afectados - to extort Chevron in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  (Id.).

Chevron also sought declaratory and injunctive relief in its complaint.  With regard to declaratory relief, Chevron sought the entry of a declaration that the Ecuadorian judgment would not be entitled to recognition under New York's Uniform Foreign Country Money-Judgments

Recognition Act, N.Y. C.P.L.R. §§ 5301-5309.   In conjunction with said request, Chevron additionally sought the entry of an injunction barring the Afectados and their counsel from taking any steps toward seeking recognition and enforcement of any Ecuadorian judgment that might be at issue in any court in the world.  (Id. at ¶ 15).

On February 8, 2011, Judge Kaplan granted Chevron its Temporary Restraining Order ("TRO").  (Id. at ¶ 17).  The TRO prohibited the Afectados - and their counsel - from "funding, commencing, prosecuting, advancing in any way, or receiving benefit from, directly or indirectly, any action or proceeding for recognition or enforcement of any judgment entered against Chevron . . . or for prejudgment seizure or attachment of assets based on any such judgment."  (Id. citing Chevron v. Donziger, et al., 1:11-cv-00691-LAK, Docket Entry. No. 77 (S.D.N.Y. Feb. 9, 2011)).  On February 9, 2011, although Patton Boggs never filed a formal appearance as counsel for the Afectados in the Southern District of New York, Chevron's counsel sent a letter to attorneys in Patton Boggs' Newark, New Jersey office informing Patton Boggs that it considered the firm "on actual notice of, and bound by" the TRO.  (Id. at ¶ 18).

On March 7, 2011, in a 131-page opinion, Judge Kaplan preliminarily enjoined enforcement of the Ecuadorian judgment.  (Id. at ¶ 22).  Again, Chevron sent Patton Boggs' Newark, New Jersey counsel a letter informing counsel that it considered the firm "on actual notice of, and bound by" the preliminary injunction.  (Id. at ¶ 23).  In accordance with Federal Rule of Civil Procedure 65(c), Judge Kaplan also ordered Chevron to post a bond in the amount of $21.8 million.  (Id. at ¶ 24).  The required bond was posted on March 11, 2011.  (Id.).

The Afectados appealed the preliminary injunction to the United States Court of Appeals for the Second Circuit on March 24, 2011.  (Id. at ¶ 25).  The Afectados also sought Judge Kaplan's recusal.  On September 19, 2011, the Second Circuit issued a summary order vacating

the preliminary injunction and denying the request for recusal.  (Id. at ¶ 32).  On January 26, 2011, the Second Circuit issued a full opinion holding that New York's Uniform Foreign Country Money-Judgments Recognition Act does not authorize a judgment debtor to seek a declaration of non-enforcement of a foreign judgment before a judgment-creditor explicitly attempts to enforce that judgment in New York State.  Chevron Corp. v. Camacho, et al., 11-cv-1150 (L), 11-cv-1264(CON), Docket Entry No. 648 (2d Cir. Jan, 26, 2012).  (Compl. at ¶ 33).  Accordingly, the Second Circuit vacated the preliminary injunction and remanded with instructions to dismiss Chevron's declaratory judgment act claim.  The Second Circuit did not explicitly rule on the balance of Chevron's claims.

It is in the context of that proceeding - the findings Judge Kaplan reached and the ensuing aftermath - that the present action has landed on the doorstep of the District of New Jersey.  Specifically, on February 15, 2012, Plaintiff filed its Complaint seeking the following claims for relief:  (1) Execution of Chevron's $21.8 million preliminary injunction bond; (2) Attorneys' fees under New York state law; and (3) Damages in excess of the bond for malicious prosecution.  (Id. at ¶¶ 45-61).[1]

On March 13, 2012, Chevron filed the instant motion to transfer, arguing that this Court should transfer this case to the Southern District of New York pursuant to either the "first filed" rule or 28 U.S.C. § 1404(a).  (Docket Entry No. 7).  On April 9, 2012, Patton Boggs filed a brief in opposition (Docket Entry No. 21, "Pl.'s Opp. Br.") and, on April 16, 2012, Chevron filed a

---

[1]         On March 13, 2012, Chevron filed an application to exonerate the $21.8 million preliminary injunction bond it posted in Chevron Corp. v. Donziger, et al., No. 11-00691 (LAK).  On April 2, 2012, Judge Kaplan issued a memorandum opinion granting Chevron's motion to exonerate the bond, and ordering the bond exonerated and discharged.  (Docket Entry Nos. 17 and 19, Ex. A).

reply brief.  (Docket Entry No. 23, "Def.'s Reply Br.").[2]  The Motion to Transfer was formally referred to the Undersigned on July 11, 2012.

II.     Discussion

In federal court, transfer of venue is primarily governed by 28 U.S.C. § 1404(a).  Section 1404(a) permits a district court to transfer a case to any other district where venue is proper, such as here, "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses . . . .'"  Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).  The decision of whether to transfer a case is committed to the trial court's sound discretion.  Cadapult Graphic Sys. v. Tektronix, Inc., 98 F.Supp.2d 560, 564 (D.N.J. 2000).

The plaintiff's choice of forum should not be lightly disturbed.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  Accordingly, the party seeking transfer bears the burden of establishing that the proposed transferee forum is a proper forum and that a balancing of the proper interests weighs in favor of transferring the case there.  Id.; Hoffer v. InfoSpace.com, Inc., 102 F.Supp.2d 556, 572 (D.N.J. 2000).[3]

---

[2]      On March 19, 2012, Plaintiff filed an Amended Complaint adding an unjust enrichment claim.  (Docket Entry. No. 9, Amended Complaint ("Amended Compl."), ¶¶ 64-67).

[3]      In its moving brief, Defendant also argues that this case warrants transfer to the Southern District of New York under the first-filed rule.  "'[I]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it.'"  E.E.O.C. v. University of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)).  The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank."  E.E.O.C., 850 F.2d at 971.  As such, the first-filed rule empowers courts to "enjoin" proceedings involving the same parties and the same issues before another district court.  Id. at 971-72 (citing Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp., 125 F.2d 1008, 1009 (3d Cir. 1942)).  Once a court determines that the first-filed rule applies, it has the option to either dismiss, stay, or transfer the action pursuant to 28 U.S.C. § 1404(a).  Clean Harbors, Inc. v. ACSTAR Ins. Co., No. 09-5175, 2010 WL 1930579, at *4 (D.N.J., May 12, 2010) (citation omitted).

"[A] first-to-file inquiry should generally give way to an examination of the relative convenience of competing forums, in accordance with the § 1404(a) analysis."  Automotive Technologies Intern., Inc. v. OnStar,

A.  Jurisdiction and Venue of the Transferee District:

As a threshold matter, this Court must determine if the Southern District of New York is a "district in which this action might have been brought" pursuant to § 1404(a).  A district is one in which an action "might have been brought" if that district has:  (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue.  See Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970); Yang v. Odom, 409 F.Supp.2d 599, 604 (D.N.J. 2006).  The Third Circuit made clear in Shutte that the relevant considerations in this regard are jurisdiction and venue:

> [A] transfer is authorized by [§ 1404(a)] only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; i.e., venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants.

Shutte, 431 F.2d at 24.

The Court finds that the Southern District of New York is a district where this action might have been brought because (1) it has subject matter jurisdiction in the form of diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are both from different states and the amount in controversy exceeds $75,000; (2) personal jurisdiction is appropriate in the Southern District of New York because both parties have availed itself of that District with regard to multiple matters arising from this ongoing legal dispute; and (3) venue is proper because, as set forth above, the Southern District of New York is the place where events giving rise to Plaintiff's claims occurred pursuant to 28 U.S.C. § 1391.  Moreover, the parties have been

---

LLC, No. 11-2490, 2011 WL 6303251, at *1 (D.N.J. Dec. 15, 2011) (citing Micron Tech. v. Mosaid Techs. Inc., 518 F.3d 897, 904 (Fed.Cir. 2008) ("Instead of . . . automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a).")).  Additionally, even if the Court were to find the first-filed rule applies, we would nonetheless be required to engage in a § 1404(a) analysis.  Clean Harbors, Inc., 2010 WL 1930579, at *4.  Accordingly, this Court will conduct its analysis exclusively pursuant to § 1404(a) and will not rule on the applicability of the first-filed rule in this case.

litigating various incarnations of this matter in the Southern District of New York for over 19 years. At no point has either party contested the appropriateness of that forum. As such, there is no dispute that Plaintiff could have brought this suit in the Southern District of New York.

B. Convenience and Justice Factors:

Next, the Court must determine if Chevron has established that the Southern District of New York is the more appropriate and convenient forum to hear this matter. "There is no definitive formula or list of the factors to consider when deciding a motion to transfer." Landmark Fin. Corp. v. Fresenus Med. Care Holdings, Inc., No. 09-3689, 2010 WL 715454, at *2 (D.N.J. Mar. 1, 2010). However, the Third Circuit has articulated a variety of private and public interests for the Court to consider in determining whether to transfer a case under Section 1404(a).

The private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of witnesses to the extent that they may be unavailable for trial in one of the fora; and (6) the location of sources such as books and records to the extent that the records could not be produced in the alternative forum. See Jumara, 55 F.3d at 879.

The public interests to consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id. These factors are not exhaustive. Instead, "a transfer analysis under Section 1404 is a flexible and

individualized analysis which must be made on the unique facts presented in each case." Lawrence v. Xerox Corp., 56 F.Supp.2d 442, 450 (D.N.J. 1999).

        a.  Private Interests Weigh in Favor of Transfer

As to the first factor, a plaintiff's choice of forum is given great weight in an analysis under Section 1404(a). Shutte, 431 F.2d at 25 ("[A] plaintiff's choice of a proper forum is a paramount consideration" in any transfer analysis); Lony v. E.I. DuPont de Nemorus & Co., 886 F.2d 628, 633 (3d Cir. 1989). However, the plaintiff's choice of forum is only one factor for the court to consider. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988). Less deference is given to the plaintiff's choice, for example, when "the case has little connection with the chosen forum." Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd., 847 F.Supp. 1244, 1246 (D.N.J. 1994). See also A.T. & T. v. MCI, 736 F.Supp. 1294, 1306 (D.N.J 1990) ("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference.").

The parties dispute the weight to be given to Patton Boggs' choice of forum. Chevron argues that Patton Boggs is an international law firm with offices in Manhattan, plainly evidencing an ability to prosecute this action in the Southern District of New York. (Motion to Transfer at 25). Moreover, Chevron contends that Patton Boggs' "preference" should be afforded little to no weight as it is a "transparent effort to evade Judge Kaplan's ongoing jurisdiction." (Id. at 24). Plaintiff disagrees. Patton Boggs contends that New Jersey is Patton Boggs' "home turf" and bears a substantial connection to this lawsuit. (Pl.'s Opp. Br. at 23). Specifically, Plaintiff's Newark, New Jersey office is the hub of its work for the Afectados. (Id.). To that end, Chevron sent multiple emails to the lawyers in the firm's Newark office

informing them that Judge Kaplan entered orders restraining and enjoining their ability to seek enforcement of the Ecuadorian judgment.  (Id.).

The Court acknowledges the deference generally afforded to a plaintiff's choice of forum.  See Wm. H. McGee & Co., v. United Arab Shipping Co., 6 F.Supp.2d 283, 290 (D.N.J. 1997) (citation omitted).   Here, however, several independent reasons exist to afford less deference to Patton Boggs' choice.  First, nearly all of the essential operative facts occurred in New York, not in New Jersey.  "[W]hen the central facts of a lawsuit occur outside the chosen forum, plaintiff's choice of forum is accorded less weight."  NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F.Supp.2d 317, 321 (D.N.J. 1998).  Patton Boggs seeks enforcement of a bond filed in a pending action in the Southern District of New York.[4]   Next, Plaintiff seeks the recovery of legal fees incurred in resisting, and attempting to have lifted, an unlawful restraint. Patton Boggs additionally seeks relief stemming from Chevron's alleged malicious prosecution. Lastly, Patton Boggs' unjust enrichment claim seeks disgorgement of any "ill-gotten gains" Defendant obtained in pursuing the TRO and preliminary injunction.  (Amended Compl. ¶¶ 45- 67).  The central facts underlying all four claims unequivocally arose in the Southern District of New York.  As Chevron aptly notes, "It is harder to imagine a case with a closer connection between a venue and the events giving rise to a suit than this case has to the SDNY:  the events on which this action is premised occurred not just within the SDNY's geographic boundaries, but within an SDNY courtroom."  (Def.'s Reply Br. at 10-11).  In sum, whatever connection this forum has to the subject matter at hand is overshadowed by the Southern District of New York's close connection to the central facts of the lawsuit.  NCR Credit Corp., 17 F.Supp.2d at 321.

---

[4]  To the extent Judge Kaplan's exoneration order moots Plaintiff's claim, Plaintiff nonetheless contends it is entitled to relief as a result of the damage Chevron's allegedly wrongful injunction caused Plaintiff.  (Pl.'s Opp. Br. at 12- 13).

Second, the Court finds Patton Boggs' characterization of New Jersey as its "home turf", at best, overreaching.  Patton Boggs is an international law firm headquartered in Washington, D.C.  Patton Boggs also has a New York office headed by the partner leading this litigation. (Def.'s Reply Br. at 9, Stern Supplemental Declaration ("Supp. Dec.") ¶¶ 36-37).  In A.T. & T., Plaintiff argued that although it was a New York corporation with its principal place of business in New York, New Jersey "was the home of every major AT & T division and [was] the center of AT & T's long distance business."  736 F.Supp. at 1297.  The Court nevertheless rejected this argument:  "[W]hile AT & T maintains a considerable presence in New Jersey, it is a New York corporation with its principal place of business in that state.  Therefore, AT & T cannot be said to be entitled to the greatly enhanced deference due to a plaintiff suing in its home state."  Id. at 1306.  See Ricoh Co. Ltd., 817 F.Supp. at 480-82.  Similarly, although the Court acknowledges that Patton Boggs maintains a New Jersey office and, moreover, that Chevron sent emails regarding the Afectados' litigation to counsel at the New Jersey office, Plaintiff is, at core, an international office with Washington D.C. headquarters.  Accordingly, Patton Boggs is not entitled to the same deferential considerations afforded plaintiffs that bring suit in their home state.

Next, Chevron's forum preference weighs in favor of litigating the matter in the Southern District of New York, as does the fact that the claims at issue arose in the Southern District of New York.  Where the claims arose turns on which forum contains the center of gravity of the dispute, events, and transactions.  See Park Inn Intern., L.L.C. v. Mody Enterprises, Inc., 105 F.Supp.2d 370, 377-78 (D.N.J. 2000).  "The center of gravity analysis is a fact sensitive inquiry that seeks to identify the forum in which the operative facts giving rise to the litigation occurred."  Travelodge Hotels, Inc. v. Perry Developers, Inc., No.11-1464, 2011 WL 5869602, at

*5 (D.N.J. Nov. 22, 2011). The "locus of the alleged culpable conduct" determines the place where the claim arose. Van Cauwenberghe v. Biard, 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). Here, as the Court has already determined, the alleged culpable conduct arose in New York. To reiterate, Chevron filed suit against the Afectados in the Southern District of New York. Judge Kaplan ordered Chevron to post the subject bond in that action. Further, Chevron's claims for attorneys' fees and malicious prosecution require an interpretation of the propriety, validity, and enforceability of Judge Kaplan's prior rulings. See LG Electronics, Inc. v. First Intern. Computer, Inc., 138 F.Supp.2d 574, 590 (D.N.J. 2001) (transferring case to the Northern District of California where, among other things, center of gravity of alleged wrongful activity was California and defendants' more convenient forum was in California).

Finally, where Patton Boggs purportedly performed the legal services for the Afectados is of no moment. Plaintiff contends that regardless of where the injunction was filed, Patton Boggs was enjoined from conducting its ordinary business operations - providing legal services to its clients - in New Jersey. (Pl.'s Opp. Br. at 23). Accordingly, Plaintiff suffered injury here in New Jersey. (Id.). Plaintiff, however, misconstrues the nature of the "center of gravity" analysis. Although Plaintiff maintains that its Newark, New Jersey office is the "undisputed hub" of its work for the Afectados, it fails to ascribe proper weight to the location at which the operative facts which form the basis of its claims occurred. Numerous courts in this District have found similar contentions to be insufficient to overcome the "center of gravity" determination. See, e.g., Perry Developers, Inc., 2011 WL 5869602, at *6; Days Inns Worldwide, Inc. v. Ram Lodging, No. 09-2275, 2010 WL 1540926, at *6 (finding transfer appropriate to forum where defendant's breach occurred as opposed to situs where services were

provided to defendants, plaintiff executed the License Agreement, performance under the Agreement was contemplated and undertaken, and plaintiff's contend it realized financial damages); Days Inn Worldwide, Inc. v. Inv. Prop. of Brooklyn Center, LLC, No. 08-390, 2009 WL 3153277, at *4 (finding that plaintiff's claims centered around alleged acts in the transferee district notwithstanding plaintiff's assertion that it approved, executed, and mailed the operative agreement from New Jersey); Santomenno v. Transamerica Life Ins. Co., No. 11-736, 2012 WL 1113615, at *8 ("[T]he location of the alleged injury is not considered when determining the 'center of gravity' or where the claim arose in matters where no physical injury has occurred.") (citation omitted).  As such, notwithstanding Plaintiff's assertions to the contrary, these factors weigh in favor of transfer.

The fourth private factor - *i.e.,* the convenience of the parties in this case - constitutes a relatively neutral consideration.  However, in favor of Chevron's transfer argument, all parties necessary to the resolution of this action are already participating in the action pending in the Southern District of New York.  (Motion to Transfer at 25).  This indicates greater convenience to Defendant in litigating this case in the proposed transferee district.  Moreover, although Plaintiff maintains a Newark, New Jersey office, neither financial considerations nor physical location would appear to pose a particular impediment to Patton Boggs' ability to litigate this action in the Southern District of New York, as demonstrated by Plaintiff's willingness to previously participate in the Afectados litigation in New York.  Automotive Technologies Intern., Inc. v. OnStar, LLC, No. 11-2490, 2011 WL 5303251, at *3 (D.N.J. Dec. 15, 2011).

Fifth, neither party offers sufficient evidence suggesting that any witness may be unavailable for trial in either forum.  The convenience of witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara,

55 F.3d at 879.  However, even if transfer would slightly inconvenience witnesses, which it does not, this Court would still recommend that Chevron's Motion to Transfer be granted as the ongoing proceeding in the Southern District of New York and the instant matter substantially overlap.  The Court, like other Courts in this District, finds that litigation of substantially similar issues in two different forums - albeit across the river from each other - is an unnecessary inconvenience to witnesses.  See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc., 309 F.Supp.2d 637, 650 n.29 (finding that where testimony of many of the same witnesses would be relevant in related actions, "denial of the transfer motion would . . . . merely require the witnesses to appear twice in two different courtrooms").

Lastly, the private factor regarding the location of the relevant documents is a neutral factor that does not clearly weigh in favor of either forum.  To that end, neither party has suggested that the transportation, if necessary, of the relevant documents to either forum would be unduly burdensome or expensive.  See Fasano v. Coast Cutlery Co., No. 11-3977, 2012 WL 1715233, at * 5 (D.N.J. May 15, 2012).  In sum, on balance, the private interests in this matter would be served by transfer.

        b.  Public Interests Weigh in Favor of Transfer

The relevant public interests also weigh in favor of transferring this case to the Southern District of New York.  First, the trial or other disposition of this matter would be more efficient and expeditious if conducted in the Southern District of New York because Judge Kaplan, who is currently presiding over the related proceeding, is already intimately familiar with the facts and legal questions underlying the instant lawsuit.  Public policy favors avoiding duplicative litigation in different fora.  "[I]t is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." Job

Haines Home For the Aged v. Young, 936 F.Supp. 223, 233 (D.N.J. 1996) (quoting Ricoh Co.,

817 F.Supp. at 487 (D.N.J. 1993)).  As Judge Debevoise stated in CIBC World Markets:

> Where, as here, related lawsuits are pending elsewhere, transferring a case serves
> not only private interests but also the interests of justice because it eliminates the
> possibility of inconsistent results, Crackau v. Lucent Technologies, No. 03-1376,
> 2003 WL 22927231, at *7 (D.N.J. Nov. 24, 2003); Lawrence v. Xerox Corp., 56
> F.Supp.2d 442, 454 (D.N.J. 1999), and conserves judicial resources.   In
> Continental Grain Co. v. Barge FBL-585, the Supreme Court noted that "to
> permit a situation in which two cases involving precisely the same issues are
> simultaneously pending in different District Courts leads to the wastefulness of
> time, energy and money that § 1404(a) was designed to prevent."  364 U.S. 19,
> 26, 80 S.Ct. 1470, 4 L.3d. 2d 1540 (1960).  This court frequently has heeded this
> admonition and transferred a case to another forum when a related action was
> pending there.   See, e.g., Lawrence, 56 F.Supp.2d at 453-55; Ricoh Co. v.
> Honeywell, Inc., 817 F.Supp. 473, 487; A.T. & T. v. MCI, 736 F.Supp. 1294,
> 1307-1308 (D.N.J. 1990); Todd Shipyards Corp. v. Cunard Line Ltd., 708 F.Supp.
> 1440 (D.N.J. 1989).

309 F.Supp.2d at 650.  See, e.g., Job Haines, 936 F.Supp. at 233-34 (finding that where judge in

proposed transferee district was "intimately familiar" with the case at hand, it would be a "gross

waste of judicial resources" not to transfer the case); Yang, 409 F.Supp.2d at 608-09.

It is evident from Judge Kaplan's thorough 131-page opinion that the Southern District of

New York has already expended significant effort in familiarizing itself with this case's highly

complex factual background and applying the relevant law to it.  If the Court were to deny

Chevron's Motion to Transfer, we would be required to duplicate that effort, thus guaranteeing a

less expeditious resolution of this long pending matter.  Moreover, it would be a gross waste of

judicial resources for this Court to litigate the merits of Plaintiff's claims from scratch and, more

importantly, interpret the scope and purpose of the injunction bond Judge Kaplan issued when

Judge Kaplan could simply do so himself.  To that end, the important interest of consistency of

judgments weighs in favor of transferring this case to the Southern District of New York.  CIBC

World Mkts., 309 F.Supp.2d at 651; Dollinger v. Salomon Smith Barney Inc., No. 00-5607, 2001

WL 1917976, at *2 (D.N.J. Mar. 7, 2011) (transferring case to the District of Delaware where a substantially identical litigation was pending to avoid "duplicate litigation of the same issues and inconsistent results"); Supco Automotive Parts, Inc. v. Triangle Auto Spring Co., 538 F.Supp. 1187, 1192 (E.D.Pa. 1982) ("It is well-settled in this district that the pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue.").

Next, there is no evidence that either court poses administrative difficulties or serious practical considerations. That is, both courts can competently address the merits of the parties' respective arguments and apply the relevant laws appropriately. Santi v. National Bus. Records Mgmt., LLC, 722 F.Supp.2d 602, 608-09 (D.N.J. 2010). However, New York has a greater interest in this case insofar as Patton Boggs seeks relief under New York law. Id. Specifically, Patton Boggs' attorneys' fees claim and malicious prosecution claim are governed by New York law. See Gregory v. HMSHOST Family Restaurants, Inc., No. 09-6132, 2010 WL 2015255, at *4 (D.N.J. May 20, 2010) (granting transfer where the laws of the transferee district applied) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case . . . .")). Accordingly, these factors further favor transfer.

Finally, Patton Boggs argues that this Court has a local interest in deciding whether an allegedly unlawful injunction caused injury to a local business in our state. (Pl.'s Opp. Br. at 27). Generally speaking, the Court would have an interest in adjudicating an action where the legal interests of New Jersey citizens were impacted. Perry Developers, Inc., 2011 WL 5869602, at *7-8. However, as noted above, the Court does not consider Patton Boggs a "local business" for purposes of § 1404(a). This Court has determined New York to be the center of gravity of the instant litigation. Specifically, the conduct at issue occurred in the Southern District of New

York - in a Southern District of New York *courtroom*.  As such, that District has a particular local interest in deciding this dispute.  Id.  See LG Electronics Inc., 138 F.Supp.2d at 592 (finding transfer was warranted where the "center of gravity" of the lawsuit was in the transferee district and where that district had familiarity with the matter); Ram Lodging, 2010 WL 1540926, at *8 (finding transferee district had a stronger local interest in the outcome of the case because transferee district was "the center of the parties' dispute").

In sum, the interests of justice, judicial administration, and economy weigh heavily in favor of transfer to the Southern District of New York.  Specifically, transfer will allow the case to proceed more efficiently, save witnesses' time and money, and avoid duplicative litigation. This eliminates unnecessary expense to the parties and avoids the potential of inconsistent results.  Accordingly, the instant matter should be transferred to the Southern District of New York, the forum in which the related action is already pending.

III.    Conclusion

For the reasons stated above, this Court respectfully recommends that Defendant's Motion to Transfer be **GRANTED.**  Pursuant to L. Civ. R. 72.1(c)(2), the parties have fourteen (14) days from receipt hereof to file and serve objections.

s/Cathy L. Waldor
**Cathy L. Waldor, U.S.M.J.**