**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
            :
PATTON BOGGS LLP,           :
            :
        Plaintiff,     :
            :
     v.          :   No. 12 Civ. 9176
            :
CHEVRON CORPORATION,    :
            :
       Defendants.    :
            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANT CHEVRON CORPORATION'S RESPONSE TO PLAINTIFF PATTON BOGGS'S OBJECTIONS TO MARCH 11, 2013 REPORT AND RECOMMENDATION TO GRANT CHEVRON'S MOTION TO DISMISS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035

STERN & KILCULLEN, LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.535.1900
Facsimile:  973.535.9664

*Attorneys for Chevron Corporation*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................3

    A.  Relevant Proceedings in the Donziger Action ..................................................3

    B.  Patton Boggs's Action in New Jersey..............................................................4

    C.  Proceedings in This Court Upon Transfer .......................................................7

ARGUMENT .........................................................................................................9

    A.  Patton Boggs's First Objection Lacks Merit Because the Appeal of the
        Exoneration Order Is Not a Basis for Ignoring That Order. ...............................9

    B.  Patton Boggs's Second Objection Lacks Merit Because Patton Boggs Does Not
        Have Standing to Pursue a Malicious Use of Process Claim............................12

    C.  Patton Boggs's Third Objection Lacks Merit Because Federal Law Governs
        Patton Boggs's Claim for Attorneys' Fees. ...................................................14

    D.  Patton Boggs's Fourth Objection Lacks Merit and Its "Unjust Enrichment" Claim
        Fails for Several Reasons...........................................................................17

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Agnew v. Alicanto S.A.*,
   125 F.R.D. 355 (E.D.N.Y. 1989) ........................................................................ 15

*Almoss, Ltd. v. Furman*,
   No. 06 Civ. 8234 (LLS), 2007 WL 1975571 (S.D.N.Y. July 6, 2007) .................. 15

*Already, LLC v. Nike, Inc.*,
   133 S. Ct. 721 (2013) .......................................................................................... 10

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................................ 19

*Bakalar v. Vavra*,
   619 F.3d 136 (2d Cir. 2010) ................................................................................ 18

*Bartels v. Sperti, Inc.*,
   73 F. Supp. 751 (S.D.N.Y. 1947) ........................................................................ 10

*Bass v. First Pac. Networks, Inc.*,
   219 F.3d 1052 (9th Cir. 2000) ............................................................................. 15

*Buddy Sys., Inc. v. Exer-Genie, Inc.*,
   545 F.2d 1164 (9th Cir. 1976) ............................................................................. 11

*Bulova Watch Co. v. Rogers-Kent, Inc.*,
   181 F. Supp. 340 (E.D.S.C. 1960) ...................................................................... 16

*C.N.C. Chem. Corp v. Pennwalt Corp.*,
   690 F. Supp. 139 (D.R.I. 1988) ........................................................................... 13

*Carley v. Wheeled Coach*,
   991 F.2d 1117 (3d Cir. 1993) .............................................................................. 18

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ................................................................................ 17

*Chevron Corp. v. Donziger*,
   768 F. Supp. 2d 581 (S.D.N.Y. 2011) ............................... 4, 5, 6, 9, 10, 12, 13, 14, 15, 16

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012) ............................................................................. 1, 4

*Cook v. Colgate Univ.*,
   992 F.2d 17 (2d Cir. 1993) .................................................................................. 11

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d 777 (2012) .......................................................................................... 19

*DeCarlo v. Sanese*,
   410 N.Y.S.2d 490 (1978) ..................................................................................... 16

# TABLE OF AUTHORITIES
(continued)

**Page**

*F.T.C. v. Verity Int'l, Ltd.,*
  140 F. Supp. 2d 313 (S.D.N.Y. 2001).................................................................. 10

*Federal Beef Processors, Inc. v. CBS Inc.,*
  864 F. Supp. 127 (D.S.D. 1994) ......................................................................... 16

*Ferens v. John Deere Co.,*
  494 U.S. 516 (1990) ............................................................................................ 19

*Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.,*
  436 F.2d 1345 (10th Cir. 1971) .......................................................................... 15

*Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.,*
  134 N.J. 96, 102 (1993) ...................................................................................... 18

*Hart v. O'Malley,*
  544 Pa. 315 (1996) ........................................................................................ 13, 14

*Howat v. Kansas,*
  258 U.S. 181 (1922) .............................................................................................. 9

*I.G. Second Generation Partners, L.P. v. Duane Reade,*
  793 N.Y.S.2d 379 (2005) .................................................................................... 14

*Iama, Inc. v. Law Offices of Peter E. Meltzer,*
  No. 04141 (CDJ), 2003 WL 1875107 (Pa. Ct. Com. Pl. Mar. 17, 2003) *aff'd,* 850
  A.2d 19 (Pa. Super. Ct. 2004)............................................................................. 13

*In re Kurtzman,*
  194 F.3d 54 (2d Cir. 1999).................................................................................. 11

*Jackson v. Kessner,*
  618 N.Y.S.2d 635 (1994) .................................................................................... 13

*Lessard v. Jersey Shore State Bank,*
  702 F. Supp. 96 (M.D. Pa. 1988) ....................................................................... 13

*LoBiondo v. Schwartz,*
  199 N.J. 62 (2009) .............................................................................................. 13

*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007) ............................................................................................ 16

*Merck & Co., Inc. v. Technoquimicas S.A.,*
  No. 01 Civ. 5345 (NRB), 2001 WL 963977 (S.D.N.Y. Aug. 22, 2001) .............. 15

*Michael S. Rulle Family Dynasty v. AGL Life Assur. Co.,*
  459 F. App'x 79 (3d Cir. 2011) .......................................................................... 18

*Minn. Power & Light Co. v. Hockett,*
  105 F. Supp. 2d 939 (S.D. Ind. 1999) ................................................................ 15

*One Thousand Fleet Ltd. P'Ship v. Guerrero,*
  346 Md. 29 (Md. 2004)......................................................................................... 2

## TABLE OF AUTHORITIES
(continued)

**Page**

*Patton Boggs LLP v. Chevron Corp.*,
   683 F.3d 397 (D.C. Cir. 2012) ........................................................................ 5

*Patton Boggs, LLP v. Chevron Corp.*,
   791 F. Supp. 2d 13 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012) ........... 3, 5

*Patton Boggs, LLP v. Chevron Corp.*,
   825 F. Supp. 2d 35 (D.D.C. 2011) ................................................................... 5

*Powelton Civic Home Owners Ass'n v. Dep't of Hous. & Urban Dev.*,
   284 F. Supp. 809 (E.D. Pa. 1968) ................................................................... 12

*Puerto Rico v. Price Comm'n*,
   342 F. Supp. 1311 (D.P.R. 1972) .................................................................... 12

*Sheldon v. PHH Corp.*,
   135 F.3d 848 (2d Cir. 1998) ........................................................................... 19

*Taylor v. Nat'l Grp. of Cos., Inc.*,
   765 F. Supp. 411 (N.D. Ohio 1990) ................................................................. 10

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947) ...................................................................................... 9

*Vurimindi v. Fuqua Sch. of Bus.*,
   435 F. App'x 129 (3d Cir. 2011) ..................................................................... 18

*Wachs v. Winter*,
   569 F. Supp. 1438 (E.D.N.Y. 1983) ................................................................ 18

### Statutes

28 U.S.C. § 1404(a) ........................................................................................... 18

28 U.S.C. § 1927 ............................................................................................... 5

28 U.S.C. § 2201 ............................................................................................... 16

### Other Authorities

11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil*
   § 2954 (2d ed.) .............................................................................................. 12

### Rules

Fed. R. Civ. P. 12(b)(3) ....................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 6

Fed. R. Civ. P. 12(b)(7) ....................................................................................... 6

Fed. R. Civ. P. 64 ............................................................................................... 15

Fed. R. Civ. P. 64(a) ........................................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Civ. P. 65 ........................................................................................... 15

Fed. R. Civ. P. 65(c) ................................................................................. 4, 12

Fed. R. Civ. P. 72(b)(3) ................................................................................... 9

N.Y. C.P.L.R. § 5301 *et seq.,* ...................................................................... 16

N.Y. C.P.L.R. § 6212(b) ............................................................................... 17

N.Y. C.P.L.R. § 6212(e) ............................................................................... 16

N.Y. C.P.L.R. § 6312(b) ............................................................................... 16

N.Y. C.P.L.R. § 6313(c) ............................................................................... 16

## PRELIMINARY STATEMENT

Last year, Plaintiff Patton Boggs LLP sued Chevron Corp. ("Chevron") in the District of New Jersey, seeking to recover alleged damages and attorneys' fees out of a $21.8 million preliminary injunction bond that Chevron had posted to protect Patton Boggs's clients (the "Lago Agrio Plaintiffs" or "LAPs") in *Chevron Corp. v. Donziger et al.*, No. 11 Civ. 0691 (LAK) (the "*Donziger* action").  Patton Boggs asserted four claims, all premised on the theory that Chevron's pursuit of an injunction in *Donziger*, which the Second Circuit later reversed, was malicious and harmed Patton Boggs itself.  *See Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012).  Before this Court, Chevron moved to exonerate the bond, which this Court granted. *Donziger*, No. 11 Civ. 0691 (LAK), Dkt. 459.  Before the District Court in New Jersey, Chevron moved both to dismiss and to transfer that action.  Dkts. 7, 22.[1]  After the District of New Jersey transferred Patton Boggs's complaint to this Court and this Court then referred Chevron's motion to dismiss to Magistrate Judge Francis for report and recommendation, Judge Francis issued a thorough and well-reasoned decision recommending that this Court grant Chevron's motion to dismiss.  Dkt. 54 at 22.  Patton Boggs asserts four baseless objections to that recommendation, which this Court should overrule.

First, Patton Boggs argues that exonerating the bond had no effect on its claims because the exoneration order is the subject of a pending appeal and the Second Circuit might someday reverse.  In this, Patton Boggs reverses its recent position, when it asked the Court to dismiss this action purportedly "with prejudice" in light of the exoneration of the injunction bond in *Donziger*.  Dkt. 50 at 6.  In any event, Patton Boggs's current argument reflects a basic misunderstanding of federal practice and Article III standing, and would lead to a waste of

---

[1] "Dkt." references are to the docket in this action unless otherwise noted.

judicial resources.  Patton Boggs cannot proceed with a claim to recover on a nonexistent bond

unless, and until, the appellate court reverses the exoneration order.  And even if the bond had

not been exonerated, Patton Boggs had no basis upon which to claim against it because it lacks

standing to collect from a bond issued in a case in which it was not a party, especially where that

bond was instituted for the protection of Patton Boggs's clients, who failed themselves to claim

or seek any damages flowing from the injunction.

Second, Patton Boggs lacks standing to pursue a claim for malicious use of process

because it has never been a party to the *Donziger* action.  By definition, no "process," malicious

or otherwise, was used against Patton Boggs.  Patton Boggs cites no authority that would

recognize an exception to the fundamental rule that "the malicious use of process plaintiff must

have been an original party to the underlying action."  *One Thousand Fleet Ltd. P'Ship v.

Guerrero*, 346 Md. 29, 42 n. 4 (Md. 2004).  And permitting an exception would be inappropriate

here because Patton Boggs has actively sought to avoid appearing before this Court in the

*Donziger* action and has claimed it is not subject to this Court's jurisdiction.

Third, Patton Boggs recycles the same arguments and authorities that Judge Francis

already rejected with respect to whether the attorneys' fees claim is governed by federal or New

York law.  At bottom, Patton Boggs cannot escape the reality that Chevron sought injunctive

relief and posted the bond under Federal Rule of Civil Procedure 65, not New York law.  Thus,

federal law governs this claim, and federal law precludes the recovery of attorneys' fees.

Finally, Patton Boggs brought its "unjust enrichment" claim in New Jersey under New

Jersey law and expressly relied on New Jersey authorities in opposing Chevron's motion to

dismiss, but Patton Boggs switched to a new position once Judge Francis pointed out that New

Jersey law does not permit this claim.[2]  However, Patton Boggs waived the application of New York law to this claim.  And in any event, as Judge Francis held in the alternative, the outcome would be no different even if New York law did apply, because Patton Boggs's unjust enrichment claim is duplicative of its defective malicious use of process claim.

Each of Patton Boggs's objections fails as a matter of law.  Patton Boggs has not cited any new authority or made any new arguments to call into question the soundness of Judge Francis's recommendation.  This Court should therefore dismiss Patton Boggs's claims with prejudice.[3]

## BACKGROUND

### A.      Relevant Proceedings in the Donziger Action

On February 1, 2011, Chevron sued Patton Boggs's clients and certain of their agents, but not Patton Boggs, under RICO and various other laws.  Chevron alleges that an $18.2 billion Ecuadorian judgment was the product of fraud as part of a larger scheme to extort Chevron.  Finding "ample evidence of fraud," virtually all of which was "undisputed," this Court preliminarily enjoined enforcement of the Ecuadorian judgment on March 7, 2011.  *Chevron*

---

[2]  This is the same sort of game-playing that the District Court in the District of Columbia rejected when Patton Boggs first belatedly attempted to assert that *New Jersey law*, not the law of its then-chosen District of Columbia forum, applied—once that court dismissed Patton Boggs's complaint.  As the District of Columbia court put it, "Patton Boggs's argument is a day late and a dollar short."  *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 32 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012).

[3]  Chevron is currently considering moving for leave to assert counterclaims against Patton Boggs in this action for, among other things, malicious prosecution (in D.C. and potentially here), NY Judiciary Law § 487, and fraud.  While Patton Boggs's claims fail for numerous reasons and should be dismissed pursuant to Rule 12(b)(6), Chevron requests that, if the Court determines that dismissal is appropriate, it not enter final judgment in Chevron's favor until May 10, 2013, by which time Chevron commits to either filing a motion for leave to amend to add counterclaims against Patton Boggs or advising the Court that it has determined not to do so.

*Corp. v. Donziger*, 768 F. Supp. 2d 581, 636, 655 (S.D.N.Y. 2011).

In accordance with Federal Rule of Civil Procedure 65(c), the Court also ordered Chevron to post a bond as security for the injunction, "not to secure the collectability of [the Ecuadorian] judgment, [but] to ensure payment of any damages caused by [any inappropriate] delay in enforcement," which the Court noted left only "the time value of money" as "[t]he only possible damage." *Id.* at 657. Accordingly, the Court ordered that Chevron post a bond in the amount of six months' interest on the $18.2 billion Ecuadorian judgment, or $21,800,000. *Id.* Chevron posted the full bond on March 11, 2011. *See Donziger*, No. 11 Civ. 0691 (LAK), Dkt. 198.

The defendants appealed the preliminary injunction and sought this Court's recusal. On September 16, 2011, the Second Circuit heard oral argument. James Tyrrell of Patton Boggs represented that regardless of the injunction, the Ecuadorian judgment could not then be enforced as a matter of Ecuadorian law: "The judgment *cannot be enforced* until the final disposition of the Ecuadorian intermediate court and a decision by Chevron not to appeal further, or if a bond is required, not to post the bond." Dkt. 22-12 at 23:15–21 (emphasis added) (*Chevron Corp. v. Naranjo*, No. 11-1150-cv(L), Hr'g Tr. (2d Cir. Sept. 16, 2011)).[4]

The Second Circuit issued a summary order on September 19, 2011, vacating the preliminary injunction and denying the request for recusal. The Second Circuit issued its opinion on January 26, 2012, vacating the preliminary injunction but leaving intact this Court's factual findings and Chevron's other claims. *Naranjo*, 667 F.3d 232.

## B.      Patton Boggs's Action in New Jersey

---

[4]   The Ecuadorian judgment did not become enforceable under Ecuadorian law against Chevron until January 3, 2012—*more than three months after* the injunction at issue had been vacated. *See* Dkt. 22-12 at 23:15–21; Dkt. 22-16.

On February 15, 2012, Patton Boggs initiated this action against Chevron in the District of New Jersey, amending its complaint a few weeks later.  *See* Dkt. 9.[5]  The Amended Complaint challenges actions taken in and by this Court.  The first two of Patton Boggs's claims seek to recover damages and attorneys' fees from the preliminary injunction bond that this Court required Chevron to post in *Donziger*.  Patton Boggs's third claim for malicious prosecution also attacks the propriety of the preliminary injunction in *Donziger* and Chevron's motivations for seeking it; the fourth claim alleges "unjust enrichment" supposedly obtained as a result of the same injunction.  *Id*. at 26.

On March 13, 2012, Chevron moved to transfer this action from New Jersey to this Court, where the related *Donziger* is pending and being actively litigated.  *See* Dkt. 7.

Chevron concurrently requested in *Donziger* that the Court exonerate its $21.8 million injunction bond, given that the injunction had been vacated and there was no possibility of damages caused by the injunction.  *Donziger*, No. 11 Civ. 0691 (LAK), Dkt. 424.  Chevron personally served that request on Patton Boggs, and stated on the record that it would not oppose an appearance by Patton Boggs to challenge the motion.  *See Donziger*, No. 11 Civ. 0691 (LAK),

---

[5]  Patton Boggs has filed other lawsuits against Chevron and its counsel outside this District.  It brought a frivolous action in the U.S. District Court for the District of Columbia alleging, among other things, that Chevron's *Donziger* action had interfered with Patton Boggs's relationship with its purported clients.  The district court dismissed the action for failure to state a claim and denied reconsideration when Patton Boggs attempted to file an amended complaint.  *See Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13 (D.D.C. 2011).  Patton Boggs then filed a new, nearly identical complaint, which was also dismissed.  *Patton Boggs, LLP v. Chevron Corp.*, 825 F. Supp. 2d 35 (D.D.C. 2011).  Patton Boggs appealed to the D.C. Circuit, which affirmed the dismissals on June 22, 2012.  *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397 (D.C. Cir. 2012).  In affirming, the D.C. Circuit noted that "the district court was not impressed," and "[i]n fact, the court noted its sympathy for the defendants' argument that Patton Boggs had pursued the second suit 'unreasonably and vexatiously,' which would entitle the defendants to fees and costs under 28 U.S.C. § 1927. . . ."  *Id.* at 400 n.2 (quoting *Patton Boggs v. Chevron*, 825 F. Supp. 2d at 42).

Dkt. 432, Dkt. 458-2 at 3.  This Court treated Chevron's request as a noticed motion and, after

giving any interested party (or non-party) the opportunity to oppose—which Patton Boggs did

not do—the Court granted Chevron's motion and discharged the bond.  *Donziger*, No. 11 Civ.

0691 (LAK), Dkt. 459.  In doing so, the Court noted that "none of the defendants nor, for that

matter, anyone else ha[d] submitted . . . any claim for damages against the bond.  *Nor could any*

*properly have done so*."  *Id.* at 5 (emphasis added).  The Court added that Patton Boggs, having

failed to utilize the opportunity in *Donziger* to challenge exoneration of the bond, even while

pursuing an action for recovery on that bond in the District of New Jersey, "must live with the

consequences of their tactical decision to forego that opportunity." *Id*. at 6.  Patton Boggs's and

the LAPs' appeals of the Exoneration Order are currently pending before the Second Circuit.

*Donziger*, No. 12-1959-cv(L), No. 12-1960-cv(Con).[6]

On April 16, 2012, Chevron moved in the District of New Jersey to dismiss Patton

Boggs's amended complaint under Rules § 12(b)(3), (6), and (7).  *See* Dkt. at 22.  Chevron

argued, among other things, that:  (1) Patton Boggs lacks standing to seek "damages" out of the

injunction bond, which has now been exonerated by the Court that ordered its posting; (2) Patton

Boggs's claim for attorney's fees purportedly earned by defending against and seeking to set

aside the injunction is precluded as a matter of federal law; (3) Patton Boggs is not a proper

plaintiff in a malicious prosecution suit because it is not a defendant in *Donziger*, and thus it can

neither allege that Chevron initiated any "process" against it, nor that *Donziger* terminated in its

favor; and (4) Patton Boggs's claim that Chevron has somehow been "unjustly enriched" at

---

[6]  Chevron has moved to dismiss the appeals on the bases that (a) Patton Boggs lacks standing
because it is not a party and has not participated in the action below, and (b) the Exoneration
Order is a non-final order that does not meet the requirements of the collateral order doctrine.
No. 12-1959-cv(L), No. 12-1960-cv(Con)., Dkt. 44-1.  Those motions remain pending.

Patton Boggs's expense by obtaining a temporary injunction in *Donziger* is meritless because

Patton Boggs fails to identify any Chevron "enrichment," much less any cognizable reason to

conclude the enrichment was "unjust" or that Patton Boggs is entitled to it.  Dkt. 22-2 at 10–11.

On July 18, 2012, Magistrate Judge Cathy L. Waldor recommended that Chevron's

motion to transfer should be granted.  Dkt. 38.  Patton Boggs filed its objections on August 1,

2012.  The District Court, Judge Esther Salas, adopted the recommendation on December 14,

2012, observing that despite Patton Boggs's "content[ions] that Chevron engaged in

'jurisdictional maneuvering,'" it was Patton Boggs "who is guilty of such tactics."  Dkt. 42 at 2.

The case was transferred on December 18, 2012.  Dkt. 44.

### C.        Proceedings in This Court Upon Transfer

On December 17, 2012, Chevron answered Patton Boggs's amended complaint.  Dkts.

43, 47.  On January 16, 2013, Chevron requested that this Court rule on its fully briefed motion

to dismiss.  Dkt. 50 at 1.  Patton Boggs responded that it was "unnecessary" for the Court to

decide Chevron's motion to dismiss because Patton Boggs would be willing to stipulate to

dismiss the action "for purposes of efficiency and economy," "based on" the Exoneration Order,

while "preserving Patton Boggs's appellate rights."  *Id*. at 2.  This was a transparent attempt to

obtain a dismissal of the case on a limited basis, less than a full dismissal of all claims with

prejudice.  Accordingly, Chevron responded that Patton Boggs was not entitled to voluntary

dismissal of the action without prejudice, and that Chevron sought dismissal on numerous

grounds unrelated to the Exoneration Order.  *Id*. at 4.  Patton Boggs later asserted that "[t]he

Court's reasoning in its [Exoneration Order] would serve to dismiss, *with prejudice*, Patton

Boggs's claims in this action."  *Id*. at 6 (emphasis added).  This did not address the fact that

Patton Boggs had attempted to carve out a limitation on the effect of dismissal to which it was

not entitled.

This Court declined to enter Patton Boggs's proposed order of dismissal, which "include[d] other language that leaves the question whether the dismissal in fact would foreclose all further litigation on the claims made in the amended complaint in any forum a matter fraught with possibilities for future litigation and forum shopping." Dkt. 50 at 8. Instead, the Court stated that it would rule on Chevron's pending motion to dismiss (*id.*), and it referred the motion to Judge Francis for a Report and Recommendation. Dkt. 52.

On March 11, 2013, Judge Francis recommended that "Chevron's motion to dismiss be granted" as to all four of Patton Boggs's claims. Dkt. 54 at 22. With respect to the first claim for damages out of the injunction bond, Judge Francis reasoned that the bond had been exonerated and thus could no longer serve as a source of recovery. *Id.* at 16. Because the bond had been issued under Rule 65, and because federal law does not allow for the recovery of attorneys' fees for a wrongful injunction, Judge Francis also recommended dismissal of Patton Boggs's second claim for attorney's fees. *Id.* at 17, 19. Third, Judge Francis concluded that Patton Boggs's malicious use of process claim failed because Patton Boggs, as a non-party in the underlying *Donziger* action, lacks standing to bring such a claim. *Id.* at 19. Finally, regarding Patton Boggs's unjust enrichment claim, Judge Francis explained that New Jersey, where Patton Boggs first brought this action, does not recognize unjust enrichment as an independent cause of action, and that even under New York law the claim would fail as duplicative of other causes of action**.** *Id.* at 21–22 & n.6.

Patton Boggs objected to Judge Francis's recommendation on March 25, 2013. Dkt. 55. Patton Boggs argues that because it has appealed the Court's Exoneration Order in *Donziger*, "any reliance on th[e] challenged order [is] improper" and therefore Judge Francis should not have recommended dismissal of the claim to recover on the injunction bond. *Id.* at 7. On the

malicious prosecution claim, Patton Boggs argues that, notwithstanding its non-party, non-intervenor status, it has standing to bring such a claim because it was restrained "no differently than any other defendant party" and was prevented from "providing legal services to its clients." *Id*. at 8.  On the attorneys' fees claim, Patton Boggs contends that New York state law should apply because the injunction in *Donziger* was sought on the basis of New York law and because jurisdiction in *Donziger* is grounded in diversity.  *Id*. at 9–10.  Finally, Patton Boggs argues that Judge Francis erroneously failed to perform a choice-of-law analysis on Patton Boggs's unjust enrichment claim, and that such analysis would have led to the application of New Jersey law, not New York's.  *Id*. at 15.[7]

## ARGUMENT

### A.     Patton Boggs's First Objection Lacks Merit Because the Appeal of the Exoneration Order Is Not a Basis for Ignoring That Order.

Patton Boggs objects to the recommended dismissal of its bond claim (the first cause of action) "only insofar as the Magistrate Judge may have implicitly relied on the reasoning contained in the Exoneration Order or on a finding that this Court's Exoneration Order was a 'merits finding.'"  Dkt. 55 at 7.  In other words, Patton Boggs argues that Judge Francis should not have relied on the Exoneration Order as a basis for dismissing Patton Boggs's bond claim because the Exoneration Order is now on appeal.  This objection lacks merit.

District courts' orders "are to be respected" unless and "until . . . reversed for error by orderly review, either by itself or by a higher court."  *Howat v. Kansas*, 258 U.S. 181, 190 (1922); *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[A]n

---

[7]   Rule 72 provides that a "district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  Upon review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."). Judge Francis's reliance on the Exoneration Order was neither "premature" nor "improper" despite a pending appeal. Dkt. 55 at 6, 7. To the contrary, "[u]nless and until it is reversed and vacated" by the Second Circuit or higher authority, the Exoneration Order "must be obeyed." *F.T.C. v. Verity Int'l, Ltd.*, 140 F. Supp. 2d 313, 315 (S.D.N.Y. 2001). Judge Francis correctly recognized that "the Second Circuit must decide whether to vacate the exoneration of the Bond and allow it to be collected upon; I cannot." Dkt. 54 at 14.[8]

It is irrelevant that "the Exoneration Order was not entered by [Judge Francis and] was not entered in this action." Dkt. 55 at 6. When a district judge determines a question of law, other judges in this district must "accept it unless it be reversed or modified by a higher court." *Bartels v. Sperti, Inc.*, 73 F. Supp. 751, 754 (S.D.N.Y. 1947). Even more important, as a practical matter, even if Judge Francis agreed with Patton Boggs that this Court had improperly exonerated Chevron's bond, the bond itself had already been returned to the surety. *Donziger*, No. 11 Civ. 0691 (LAK), Dkt. 459. Thus, Patton Boggs's claim on the bond no longer presents a "Case" or "Controversy" because there is no longer anything to recover. *See, e.g., Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer

---

[8] Patton Boggs goes even further and argues that, given the pending appeal, Judge Francis could not even "implicitly rel[y] on the reasoning contained in the Exoneration Order." Dkt. 55 at 7. This, too, is wrong. A federal magistrate judge lacks the authority to alter or ignore the decisions of a presiding district judge, let alone to revisit this Court's orders issued in a *different* case. *See, e.g., Taylor v. Nat'l Grp. of Cos., Inc.*, 765 F. Supp. 411, 413–14 (N.D. Ohio 1990) ("Section 636 of the Federal Magistrates Act, which establishes the jurisdiction and powers of federal magistrates, does not authorize magistrates to reconsider prior rulings of a district judge in referred cases.").

'live' or the parties lack a legally cognizable interest in the outcome.") (internal quotation marks omitted); *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) ("[A] case that is 'live' at the outset may become moot when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.") (quotation marks omitted).

The exoneration of the bond is a compelling reason to dismiss this action because the bond can no longer serve as a source of recovery, even if the exoneration was alleged to be in error.  *See, e.g.*, *Buddy Sys.*, *Inc. v. Exer-Genie*, *Inc.*, 545 F.2d 1164, 1166, 1167-8 (9th Cir. 1976) ("It is a well-settled rule that there can be no recovery for damages sustained by a wrongful issuance of a preliminary injunction in the absence of a bond.").  Patton Boggs itself appeared to recognize this when it proposed dismissal of this action purportedly "with prejudice" in light of the Exoneration Order.  Dkt. 50 at 6, 7.  Although Patton Boggs has now attempted to reverse course, it would make no sense and would turn Article III on its head to allow Patton Boggs's moot claim on a bond to proceed under the fiction that a bond is still in place because there is a theoretical possibility of reinstatement on appeal at some uncertain point in the future.  *See In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999) (Dismissing appeal as moot where "even if we were to agree with the Trustee's argument on the merits, we cannot provide any effectual relief with respect to this appeal and any decision we issue would be purely an advisory opinion").  Such a procedure finds no support in logic or precedent, and would waste judicial and private resources.[9]

Finally, even assuming for the sake of argument this Court agrees with Patton Boggs's objection, the Court should still dismiss the bond claim.  As Chevron argued in its motion to

---

[9]   It is both ironic and revealing that the LAPs' counsel is seeking to litigate this case at the same time the LAPs claim they have insufficient funds to defend themselves in the *Donziger* action.  *See, e.g., Donziger*, No. 11 Civ. 0691 (LAK), Dkt. 968 at 2 & n.2.

dismiss, the bond was intended to protect Patton Boggs's clients (the LAPs), not their lawyers, and thus Patton Boggs does not have standing to pursue this claim.  Dkt. 22-2 at 23–24; *see, e.g.,* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 2954 (2d ed.) (Collecting authorities for proposition that "someone not a party to the case or restrained or enjoined by order of the Court is without standing to demand security for possible damages incurred as a result").  Moreover, Patton Boggs is bound by its repeated representations to this Court and the Second Circuit that the Ecuadorian judgment was unenforceable for the entire period that the injunction was pending—thus, the injunction cannot have "proximately caused" harm to anyone.  Dkt. 22-2 at 24–25.  And even if the Court were to indulge Patton Boggs's theory that the bond still exists, "whatever harm [Patton Boggs] may [have] suffer[ed] is irrelevant to the security amount under" Rule 65(c) (*Powelton Civic Home Owners Ass'n v. Dep't of Hous. & Urban Dev.*, 284 F. Supp. 809, 840 (E.D. Pa. 1968)), because Patton Boggs admits that it never even "appeared as counsel" in *Donziger* (FAC ¶18), let alone as a *party* "restrained or enjoined by [the] order" (*Puerto Rico v. Price Comm'n*, 342 F. Supp. 1311, 1312 (D.P.R. 1972)).

Patton Boggs's first objection should be overruled and its bond claim dismissed.

**B.    Patton Boggs's Second Objection Lacks Merit Because Patton Boggs Does Not Have Standing to Pursue a Malicious Use of Process Claim.**

Judge Francis recommended dismissal of Patton Boggs's malicious use of process cause of action because "Patton Boggs does not have standing to bring this claim."  Dkt. 54 at 19.  Patton Boggs objects and argues that it was effectively restrained by the injunction "no differently than any other defendant party."  Dkt. 55 at 8.  Patton Boggs's objection is not well taken.

Patton Boggs's malicious use of process claim is premised on the injunction in the *Donziger* action, but it is undisputed that Patton Boggs has never been a party to that action, and

thus was never subjected to *any* "process," as that term is used in the case law.  "It is axiomatic that only a party to the proceeding complained of is entitled to maintain an action for malicious prosecution." *Jackson v. Kessner*, 618 N.Y.S.2d 635, 637 (1994); *see also LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009) (A plaintiff claiming malicious use of process must show that a prior civil action "was instituted by this defendant against this plaintiff"); *C.N.C. Chem. Corp v. Pennwalt Corp.*, 690 F. Supp. 139, 141 (D.R.I. 1988) ("Implicit among the elements constituting this cause of action is that the previous proceeding must have been brought against the party claiming malicious prosecution.").  As Judge Francis observed, Patton Boggs has "point[ed] to no authority that contradicts this fundamental principle" (Dkt. 54 at 20), and that failure remains to this day.

Instead, Patton Boggs asserts that because it was described as a "non-party co-conspirator" in Chevron's First Amended Complaint in the *Donziger* action, this somehow gave Patton Boggs standing to bring a malicious use of process claim following the Second Circuit's reversal of the preliminary injunction.  Patton Boggs relies solely on *Hart v. O'Malley*, where the Pennsylvania Supreme Court held that a wrongful use of civil proceedings claim (as it is known in Pennsylvania) could be pursued by an intervening non-party that was later determined to be an indispensable party to the underlying action. 544 Pa. 315, 322–23 (1996).  But *Hart* has been criticized and limited even within Pennsylvania.  *See Iama*, *Inc. v. Law Offices of Peter E. Meltzer*, No. 04141 (CDJ), 2003 WL 1875107, at *3 (Pa. Ct. Com. Pl. Mar. 17, 2003) *aff'd*, 850 A.2d 19 (Pa. Super. Ct. 2004) (holding that *Hart* "was expressly limited to the facts of the case, which are inapplicable to and distinguishable from the matter at bar" and finding a wrongful use of civil proceedings could not be brought by a plaintiff was not a party to the underlying action); *Lessard v. Jersey Shore State Bank*, 702 F. Supp. 96, 98 (M.D. Pa. 1988) (Holding that a plaintiff

"lack[ed] the requisite standing" because plaintiff "was not a party to the underlying state court action," even though the action "affected [plaintiff's] interests"). Moreover, *Hart* is inapposite because, as Judge Francis noted, Patton Boggs was not "an intervenor in *Donziger*." Dkt. 54 at 20. In fact, Patton Boggs has done everything possible to *avoid* appearing in *Donziger*.[10]

To the extent this Court's injunction restrained Patton Boggs at all, it was only in the law firm's capacity as counsel for the LAPs—the named defendants—and this makes Patton Boggs no different from any other law firm that the LAPs hired. This Court should reject Patton Boggs's invitation to expand the tort of malicious use of process in New Jersey and/or New York by creating a new cause of action available to the attorney of a party against whom a malicious process is alleged to have been used.

In short, Patton Boggs's malicious use of process claim fails as a matter of law. This Court should overrule Patton Boggs's objection and dismiss this claim.[11]

### C.   Patton Boggs's Third Objection Lacks Merit Because Federal Law Governs Patton Boggs's Claim for Attorneys' Fees.

---

[10]  For example, Patton Boggs ghostwrote materials submitted to this Court. In one instance, another lawyer for the LAPs admitted during a hearing that his brief was actually written by Patton Boggs, which "didn't want to appear" before this Court. Dkt. 7-23 at 6 ("It was a firm that brought me into the case because they didn't want to appear given their being named in the papers. It was the Patton Boggs firm; you could guess that.").

[11]  Even assuming *arguendo* this Court agrees with Patton Boggs's objection and finds that Patton Boggs has standing to bring a malicious prosecution claim, the Court should still dismiss the claim. As Chevron argued in its motion to dismiss, Patton Boggs cannot plausibly allege that a prior action terminated in *Patton Boggs's* favor (another requisite element of this claim). Dkt. 22-2 at 33–34. Moreover, Patton Boggs failed to plead facts to overcome the presumption of probable cause that attached when this Court granted the preliminary injunction. *Id*. at 35-37; *see also I.G. Second Generation Partners, L.P. v. Duane Reade*, 793 N.Y.S.2d 379, 380 (2005); Restatement (Second) Torts § 675, cmt. b ("[A] decision by a competent tribunal of the person initiating civil proceedings is conclusive evidence of probable cause. This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought."). Finally, Patton Boggs failed to plead the "special grievance" required under New Jersey law. Dkt. 22-2 at 36–37.

Patton Boggs admits that if federal law governs its claim for attorney's fees, then this claim fails. Dkt. 55 at 9 (conceding that "federal law would preclude the recovery of attorneys' fees"). Judge Francis found that federal law does apply because the preliminary injunction was requested and granted, and the bond posted, pursuant to Federal Rule of Civil Procedure 65. Dkt. 54 at 17. Patton Boggs objects and argues that New York law applies because "the wrongful injunction was premised on a New York statute and the Court's jurisdiction to issue that injunction was based on diversity of citizenship." Dkt. 55 at 9. This objection is incorrect.

This Court issued the preliminary injunction in *Donziger* under Rule 65. *See Donziger*, 768 F. Supp. 2d at 656–57. It is well settled that when an injunction is issued in federal court under Rule 65, disposition of any bond is governed by federal law, whether in a diversity or federal question case. *See Almoss, Ltd. v. Furman*, No. 06 Civ. 8234 (LLS), 2007 WL 1975571, at *1 (S.D.N.Y. July 6, 2007); *see also Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1056 (9th Cir. 2000); *Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.*, 436 F.2d 1345, 1351–52 (10th Cir. 1971) (diversity case); *Minn. Power & Light Co. v. Hockett*, 105 F. Supp. 2d 939, 941 (S.D. Ind. 1999).

Patton Boggs relies on *Agnew v. Alicanto S.A.*, 125 F.R.D. 355 (E.D.N.Y. 1989), and *Merck & Co., Inc. v. Technoquimicas S.A.*, No. 01 Civ. 5345 (NRB), 2001 WL 963977 (S.D.N.Y. Aug. 22, 2001). Dkt. 55 at 9–10. In both of these decisions, however, the injunctions issued under Federal Rule of Civil Procedure 64, which, in stark contrast to Rule 65, incorporates attachment and other remedies available "under the law of the state where the court is located."

Fed. R. Civ. P. 64(a).[12]  Thus, as Judge Franc-is observed, *Bulova Watch Co. v. Rogers-Kent, Inc.* stands alone against the weight of authority that applies federal law to recovery of attorneys' fees from bonds issued under Rule 65.  *See* Dkt. 54 at 18 ("[O]ther courts have refused to follow *Bulova Watch*.").  In addition to being an outlier, *Bulova Watch* is inapposite because it concerned the validity of a South Carolina statute under the South Carolina Constitution, and thus there were unique concerns in that case supporting the application of state law.  181 F. Supp. 340 (E.D.S.C. 1960).[13]

Patton Boggs also repeats its argument that "Chevron pursued [injunctive] relief under New York law," citing to N.Y. C.P.L.R. sections 6212(e), 6312(b), and 6313(c).  Dkt. 55 at 10. Leaving aside the fact that Chevron never referred to these provisions in seeking injunctive relief, section 6312(e) addresses attachments, which are not at issue here, and sections 6312(b) and 6313(c) refer to damages paid out of the "undertaking" posted in connection with an injunction.  *See, e.g., DeCarlo v. Sanese*, 410 N.Y.S.2d 490, 490–91 (1978) ("A reference for damages for improper injunction as sought by defendant may not be made in pursuance to CPLR 6315, since no undertaking was ever filed.").  In addition, only the "defendant" in the underlying action has a right to recover damages and costs (including attorneys' fees) under C.P.L.R.

---

[12]  Likewise, in *Federal Beef Processors, Inc. v. CBS Inc.*, 864 F. Supp. 127, 130 (D.S.D. 1994), the court applied South Dakota state law because the injunction was issued in state court be-fore the case was removed to federal court.

[13]  Contrary to Patton Boggs's contention, Chevron's suit for injunctive relief was not "premised on a New York statute."  Dkt. 55 at 9.  Rather, this Court granted the injunction under Count 9 of Chevron's complaint, which was a claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), that sought resolution of applicable defenses under the New York Uniform Foreign Country Money Judgment Recognition Act, N.Y. C.P.L.R. § Section 5301 *et seq.*, federal common law, and the United States Constitution.  *Donziger*, No. 11 Civ. 0691 (LAK), Dkt. 283 ¶¶ 428, 430.  While state law defenses were necessarily at issue, the DJA permits a putative defendant preemptively to seek a declaration that it has a valid defense. *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 n.7 (2007).

§ 6212(b).  Thus, even indulging Patton Boggs's erroneous premise that Chevron sought the injunction under a New York statute, the "undertaking" has been discharged and Patton Boggs cannot recover it in any event.

The Court should overrule Patton Boggs's objection and dismiss the flawed claim for attorney's fees.

### D.    Patton Boggs's Fourth Objection Lacks Merit and Its "Unjust Enrichment" Claim Fails for Several Reasons.

With respect to Patton Boggs's fourth claim for "unjust enrichment," Judge Francis recommended dismissing this claim because New Jersey law does not recognize it as an independent tort.  Dkt. 54 at 21.  Patton Boggs objects and argues that Judge Francis should have applied New York law to the unjust enrichment claim.  Dkt. 55 at 11.  This objection lacks merit.

First, Patton Boggs has waived any argument that New York law applies.  Patton Boggs brought this case in New Jersey as a group of "New Jersey-based attorneys," arguing that "any damage inflicted on [them] by way of the Preliminary Injunction [occurred] in New Jersey."  Dkt. 8 ¶ 42; *accord* Dkt. 21 at 2, 22.  Patton Boggs touted that it had "never appeared as counsel for the [LAPs] in any related proceedings in the Southern District of New York," and it relied on the fact that Chevron sent notice of the preliminary injunction "to attorneys in Patton Boggs' Newark, New Jersey office."  Dkt. 8 ¶ 18.

When Chevron moved to dismiss Patton Boggs's unjust enrichment claim as defective under New Jersey law (Dkt. 22-2 at 30), Patton Boggs did not respond that New York law should govern.  On the contrary, Patton Boggs's opposition cited *only* New Jersey case law, and argued that this claim was sufficient under those New Jersey authorities.  Dkt. 27 at 36.  Patton Boggs thus consented to the Court's application of New Jersey law to this claim.  *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) ("Since no party has challenged the

choice of [law], all are deemed to have consented to its application."); *Carley v. Wheeled Coach*, 991 F.2d 1117, 1134 (3d Cir. 1993) ("[A]cquiescence in court's choice of law amounts to waiver of any objection to such choice."); *see also Wachs v. Winter*, 569 F. Supp. 1438, 1443 (E.D.N.Y. 1983) ("When both parties have been silent on the issue of which law to apply, it can be said that they have acquiesced in the application of the forum law.").

Second, under New Jersey's choice-of-law principles, where the result would be the same under the laws of either state, a court need go no further.  *See Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102 (1993); *see Michael S. Rulle Family Dynasty v. AGL Life Assur. Co.*, 459 F. App'x 79, 82 n.2 (3d Cir. 2011) (Declining "to undertake a full choice of law analysis" where "the results [would] be the same under the law of either state"); *see also Bakalar v. Vavra*, 619 F.3d 136, 139 (2d Cir. 2010).[14]  Even where "the relevant state laws governing [the] claims differ," a court "must determine if there is [a] true conflict on [the] facts" before performing a choice of law analysis.  *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 134 (3d Cir. 2011).

Here, there is no true conflict because, as Judge Francis held in the alternative, Patton Boggs's unjust enrichment claim fails under New York law as well as that of New Jersey.  Dkt. 54 at 22 n.6.[15]  Judge Francis did not err in this conclusion because Patton Boggs's unjust

---

[14]  In opposing transfer of the action to this Court, Patton Boggs also argued that "There is No Significant Difference Between the Relevant Laws of New Jersey and New York."  Dkt. 21 at 34.

[15]  Patton Boggs argues that even though Chevron relied solely on New Jersey law in seeking dismissal of this claim, Chevron should now be "estopped" from arguing New Jersey law after having succeeded in obtaining transfer to this Court. Dkt. 55 at 13 n.5.  Patton Boggs is mixing apples and oranges.  Transfer of this case was proper because New York was—and is—the proper *venue* to hear this dispute. Dkt. 7-1 at 25.  But choice-of law is a different question.  "[W]hen a case has been transferred pursuant to 28 U.S.C. § 1404(a), . . . a court

[Footnote continued on next page]

enrichment claim "merely duplicates Patton Boggs' 'conventional' tort claim for malicious prosecution/malicious use of process."  *Id*.  In response, Patton Boggs argues for the first time that these two claims "are not duplicative because they do not allege the same damages."  Dkt. 55 at 14.  But Patton Boggs made clear in its amended complaint that it seeks "*any and all damages* suffered by Patton Boggs as the result of Chevron's dishonest and malicious prosecution." Dkt. 8 ¶ 62.  Thus, the relief that Patton Boggs seeks for malicious prosecution necessarily overlaps with any other relief sought in the case, including unjust enrichment.

Moreover, Patton Boggs fails to plead any facts about how Chevron supposedly was "enriched" at Patton Boggs's expense due to the injunction.  As Patton Boggs admits, the Ecuadorian judgment was otherwise unenforceable by operation of Ecuadorian law for the entire period the injunction was in place.  *See* Dkt. 22-2 at 15.  "[U]njust enrichment is not a catchall cause of action to be used when others fail," but rather is available only when "circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).  Patton Boggs does not and cannot plausibly allege that such an obligation exists here, and Chevron has neither obtained a "benefit" nor "received money to which [it was] not entitled" through the preliminary injunction.  *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Patton Boggs's objections to Judge Francis's recommendation lack merit and the Court should dismiss the unjust enrichment claim.

---

[Footnote continued from previous page]

will apply the law of the transferor forum."  *Sheldon v. PHH Corp.*, 135 F.3d 848, 852 (2d Cir. 1998) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990)).

**CONCLUSION**

Chevron respectfully requests that the Court overrule Patton Boggs's objections and adopt Judge Francis's recommendation.  The Court should dismiss this action with prejudice.

Dated:  April 11, 2013

Respectfully submitted,

By: _____ /s/ Randy M. Mastro _____

Randy M. Mastro, Esq.
Andrea E. Neuman, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

Herbert J. Stern, Esq.
STERN & KILCULLEN, LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.535.1900
Facsimile:  973.535.9664

*Attorneys for Chevron Corporation*