UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
                                             :

PATTON BOGGS LLP,             :

                Plaintiff,            :

                                             :    Case. No. 12-cv-9176 (LAK)

      v.                                   :

CHEVRON CORPORATION,          :

               Defendant.          :

------------------------------------ x


# CHEVRON CORPORATION'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE COUNTERCLAIMS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
*Attorneys for Defendant and Counterclaimant*
*Chevron Corporation*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1
PROCEDURAL BACKGROUND.............................................................................................. 3
LEGAL STANDARD.................................................................................................................. 5
ARGUMENT............................................................................................................................... 5
CONCLUSION............................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
   760 F.2d 442 (2d Cir. 1985) ............................................................................................... 7

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993) ...................................................................................... 5, 6, 9

*Chevron Corp. v. Berlinger*,
   629 F.3d 297 (2d Cir. 2010) ............................................................................................... 3

*Chevron Corp. v. Donziger*,
   768 F. Supp. 2d 581 (S.D.N.Y. 2011) ............................................................................... 4

*Chevron Corp. v. Donziger*,
   No. 11-cv-0691, 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013) ........................................ 4

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012) ............................................................................................... 4

*In re Chevron Corp.*,
   709 F. Supp. 2d 283 (S.D.N.Y. 2010) ............................................................................... 3

*In re Chevron Corp.*,
   736 F. Supp. 2d 773 (S.D.N.Y. 2010) ............................................................................... 3

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010) ............................................................................... 3

*Krumme v. WestPoint Stevens, Inc.*,
   143 F.3d 71 (2d Cir. 1998) ................................................................................................. 7

*Lago Agrio Plaintiffs v. Chevron Corp.*,
   409 Fed. Appx. 393 (2d Cir. 2010) .................................................................................... 3

*Patton Boggs LLP v. Chevron Corp.*,
   Civil Action No. 2:12-901, 2012 WL 6568526 (D.N.J. Dec. 14, 2012) ........................... 4

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*,
   46 F.3d 230 (2d Cir. 1995) ................................................................................................. 7

*United States v. Continental Ill. Nat'l Bank & Trust Co.*,
   889 F.2d 1248 (2d Cir. 1989) ............................................................................................. 6

*Zahra v. Town of Southold*,
   48 F.3d 674 (2d Cir. 1995) ................................................................................................. 7

**Rules**

Fed. R. Civ. P. 15(a)(2) ........................................................................................................ 1, 5

Defendant Chevron Corporation ("Chevron") moves this Court for leave to amend its Answer in order to assert counterclaims. A copy of Chevron's proposed counterclaims is attached as Exhibit A.

**PRELIMINARY STATEMENT**

Chevron seeks leave pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure to assert counterclaims against Patton Boggs for fraud, deceit under New York Judiciary Law § 487, and malicious prosecution. This lawsuit is in its earliest stages, as this Court has not yet ruled on Chevron's challenges to the sufficiency of the complaint (though the Magistrate Judge has recommended dismissal), Chevron filed its Answer less than five months ago, no discovery has been taken, and no trial date has been set. Patton Boggs will not be prejudiced if Chevron is permitted to assert its counterclaims, and this Court should "freely give leave" for Chevron to do so. Fed. R. Civ. P. 15(a)(2).

The baseless claims in the lawsuit that Patton Boggs initiated in the District of New Jersey are only the latest iteration of that firm's bad faith misconduct at Chevron's expense. Patton Boggs has stepped far beyond any proper role as "litigation counsel" to the Lago Agrio Plaintiffs ("LAPs"), and has committed numerous tortious acts aimed at Chevron. It filed three vexatious and substantially identical lawsuits on its own behalf against Chevron in the District of Columbia, all of which were dismissed. It maliciously filed the present action without any basis, in the wrong court and asserting causes of action where it is not even an appropriate plaintiff—in the process usurping claims that could only have belonged to its own client, who declined to assert them. It has made numerous objectively deceitful statements before both this Court and the Second Circuit, in derogation of its duties under the New York Judiciary Law. It has sought to defraud and mislead numerous courts, as well as federal and state governmental agencies and offi-

1

cials, Chevron's shareholders, investors, analysts, and the media. And it seeks to enforce a $19 billion Ecuadorian judgment that it knows or is recklessly indifferent to the fact that it was ghostwritten by the LAPs' own lawyers.

New information has also come to light regarding Patton Boggs's efforts to defraud the Burford Group, a litigation funding entity, out of millions of dollars by making numerous false statements and omissions about the propriety of acts of the LAPs and their cohorts in Ecuador and elsewhere—injuring Chevron in the process. Patton Boggs "engaged in a multi-month scheme to deceive and defraud in order to secure desperately needed funding from [Burford], all the while concealing material information and misrepresenting critical facts in the fear that we would have walked away had we known the true state of affairs." Ex. 1. Burford has now come forward to explain that it delegated to Patton Boggs certain parts of the analysis necessary to determine whether Burford would invest in the Lago Agrio Litigation. Exh. 2 ¶ 8. In particular, Burford relied on Patton Boggs to "review the massive record amassed in the Ecuadorean proceeding" and to "travel to Ecuador to conduct [] on-site diligence." *Id*. Patton Boggs provided its analysis in the *Invictus* memorandum, where it falsely stated that "no Ecuadorian law or rule" prohibited the LAPs' representatives' contacts with Cabrera, that Chevron was "distort[ing] reality" with its allegations regarding such contacts, and that Chevron 's attempts to have the Lago Agrio Litigation dismissed based on such contacts were "especially frivolous." *Id*. ¶¶ 8, 10-11. Patton Boggs also did not disclose to Burford that the "cleansing experts" would be "relying on [the] tainted bases" of the Cabrera Report. *Id*. ¶ 16. Based on these false statements, among others, Burford invested $4 million in the LAPs' scheme. *Id*. ¶¶ 13, 18. That funding decision in turn enabled and emboldened the LAPs to continue to injure Chevron by means of their fraudulent and extortionate scheme.

New information has also been revealed regarding Patton Boggs's duplicity and false statements before the federal courts. A document disclosed only three weeks ago shows that Patton Boggs partner Eric Westenberger was, in April 2010, instructing co-counsel "not to divulge his firm's involvement" and demanding that Stratus's lawyer make himself, or the Stratus witnesses, "unavailable in order to keep the [Section 1782] depositions from proceeding." Ex. 3. Nonetheless, more than six months later, Patton Boggs partner James Tyrrell told the Second Circuit that Patton Boggs "only came into the case last Thursday."

Patton Boggs will suffer no prejudice if Chevron is permitted leave to amend its answer and assert counterclaims. The Court should grant Chevron's motion.

## PROCEDURAL BACKGROUND

This Court is familiar with the background of this case, which Magistrate Judge Francis well described in his Report and Recommendation on Chevron's Motion to Dismiss Patton Boggs's claims. Dkt. 54. The history of the Lago Agrio Litigation, and Chevron's lawsuit against the LAPs and some of their attorneys and consultants, has been extensively chronicled by this Court.[1] Accordingly, Chevron will only briefly describe the events most relevant to this motion.

Patton Boggs filed this lawsuit, as a plaintiff in its own name, against Chevron in the District of New Jersey, seeking to execute against the bond entered in this Court in connection with the preliminary injunction in the Count 9 litigation, to recover attorney's fees their clients incurred in resisting the TRO and preliminary injunction, to obtain damages for malicious prosecu-

---

[1] Such decisions include *In re Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010), *aff'd sub nom.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2010); *In re Chevron Corp.*, 736 F. Supp. 2d 773 (S.D.N.Y. 2010); *In re Chevron Corp.*, 749 F. Supp. 2d 135, *fuller opinion*, *In re Chevron Corp.*, 749 F. Supp. 2d 141, *on reconsideration*, 749 F. Supp. 2d 170 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 Fed. Appx. 393 (2d Cir. 2010); *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581 (S.D.N.Y. 2011) (granting preliminary injunction), *rev'd*, *Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012); *Chevron Corp v. Donziger*, No. 11-cv-0691, 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013) (ordering production of documents from Patton Boggs).

tion, and to gain disgorgement of Chevron's purportedly ill-gotten gains derived from the TRO and preliminary injunction. Because many of complained-of actions occurred in this District (and before this Court), and because this Court issued the bond in question, Chevron moved to have this action transferred to this Court. Civil Action No. 2:12-901 (D.N.J.) Dkt. 7. Chevron also moved in this Court to exonerate the Bond, and this Court granted the motion on April 2, 2012. Civil Action No. 1:11-691 Dkt. 459.

Chevron also moved to dismiss this action in the District of New Jersey. After that motion was fully briefed, the New Jersey district court granted Chevron's motion to transfer on December 14, 2012. *Patton Boggs LLP v. Chevron Corp.*, Civil Action No. 2:12-901, 2012 WL 6568526, at *1, 3 (D.N.J. Dec. 14, 2012). Chevron filed its Answer in this Court on December 18, 2012. This Court granted Chevron's request to consider the motion to dismiss on the papers filed in New Jersey, and referred the motion to Magistrate Judge Francis. Dkts. 50 ,52. On March 11, 2013, Judge Francis recommended that Chevron's Motion to Dismiss be granted. Dkt. 54.

Meanwhile, Chevron's lawsuit against the LAPs and their attorneys and consultants has continued apace. Of particular relevance to this action, on March 15, 2013, this Court granted in part Chevron's motion to compel Patton Boggs to produce documents. Case No. 1:11-cv-00691-LAK Dkt. 905. This Court found that Chevron had established probable cause that a crime or fraud was committed with respect to certain subjects, including:

- The alleged bribery of the Ecuadorian judge and the writing of the Judgment and other judicial documents in the Lago Agrio case.
- The claim that the LAPs wrote the reports submitted over Calmbacher's signature and affixed signature pages, knowing that the reports did not reflect his views.
- The circumstances in which the Lago Agrio court terminated the judicial inspection process.

4

- The selection and appointment of Cabrera, the preparation and submission of his report to the Lago Agrio court, and its presentation as his independent work.
- The submission of deceptive accounts of the LAPs' and Stratus' relationship with Cabrera in the District of Colorado and elsewhere in Section 1782 proceedings.

Case No. 1:11-cv-00691-LAK Dkt. 905 at 65-66.

Accordingly, the Court ordered Patton Boggs to disclose fact work product and to log opinion work product with respect to those subjects.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that courts should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). In order to determine whether the plaintiff will be prejudiced, courts consider: "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id*. Absent a showing of bad faith or undue prejudice, "mere delay" provides no basis to deny a party its right to amend. *Id*.

## ARGUMENT

This Court should grant Chevron leave to assert the proposed counterclaims because Patton Boggs will not suffer undue prejudice and Chevron has not brought this motion in bad faith. None of the factors listed in *Block* is implicated by this motion.

The timing of the submission of the proposed counterclaims will not require Patton Boggs to expend significant additional resources to conduct discovery. Documents regarding the

5

conduct alleged are either largely within Patton Boggs's control (thus obviating the need to seek discovery elsewhere) or are intertwined with the ongoing litigation in *Chevron Corp. v. Donziger*, No. 1:11-cv-00691-LAK, an action where Patton Boggs is already being required to collect and produce documents and in which Patton Boggs's clients have obtained voluminous discovery from Chevron. In any case, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989).

Chevron's proposed counterclaims will not significantly delay the resolution of this dispute. This Court has not yet ruled on Chevron's motion to dismiss, no discovery has been conducted, and no trial date has been set. Less than five months have passed since Chevron filed its Answer on December 18, 2012. Leave to amend has been granted in circumstances where the movant delayed for much longer and even where the resolution of the case could be delayed. *See, e.g., Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (defendant permitted to amend Answer to assert fraud defense more than four years after complaint was filed). And even in cases where leave to amend has been denied, those cases have involved claims or counterclaims being asserted after discovery has closed or at summary judgment, or on the eve of trial—circumstances that are not present here. *See, e.g., Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 87-88 (2d Cir. 1998) (denial of leave to amend appropriate where defendant was aware of basis for counterclaim for more than three years and discovery had closed); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (affirming denial of leave to amend where request filed two and one-half years after action commenced and three months prior to trial); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (affirming

denial of leave to amend where new claims were based on entirely new set of operative facts, discovery had closed, and summary judgment motion had been filed).

Chevron has only recently discovered information on which some of these counterclaims are based. Burford Group Ltd. and related entities have now come forward to publicly disclose their unwitting involvement in the LAPs' and Patton Boggs's fraudulent scheme. Christopher Bogart, the co-founder and CEO of Burford, stated in a recent declaration that Burford made the decision to invest in the Lago Agrio litigation based on the *Invictus* memorandum prepared by Patton Boggs. Ex. 2 ¶¶ 8, 13, 16. But the *Invictus* memorandum was filled with misrepresentations and material omissions, including, among others, that "no Ecuadorian law or rule" prohibited the LAPs' representatives' contacts with Cabrera, that Chevron's attempts to gain dismissal of the Lago Agrio Litigation based on the improper contacts were "especially frivolous," and that Chevron was "distort[ing] reality" with its allegations regarding such contacts. *Id*. ¶¶ 10-11. The Invictus memorandum also described the Ecuadorian court's decision to allow "cleansing expert" reports as a "'significant tactical victory for the Plaintiffs, insofar as it substantially weakens Chevron's argument' about the Cabrera report's infirmities," but did not inform Burford that "the reports of these 'cleansing experts' would be relying on [the] tainted bases" of the Cabrera Report. *Id*. ¶ 16. Patton Boggs did not disclose what it already knew—that the Cabrera Report had been entirely ghostwritten by the LAPs' representatives and that the LAPs' Ecuadorian attorneys were worried that, if such information were disclosed, they could all "go to jail." *Id*. ¶¶ 14-15. Burford was defrauded into investing $4 million into the litigation at a critical time, which caused great harm to Chevron. This information was not available to Chevron at the time it filed its Answer.

Similarly, an email disclosed only three weeks ago sheds additional light on both Patton Boggs's bad-faith litigation tactics and false statements before U.S. courts. Ex. 3. Patton Boggs, through Westenberger, instructed attorneys for Stratus to ignore or disobey deposition subpoenas or make themselves or their clients unavailable to prevent the depositions from proceeding. Stratus's lawyer described Westenberger's instructions as "disturbing," as Westenberger challenged Stratus "to take positions which are implausible at best, and very possibly spurious." Westenberger "backed down" when Stratus's counsel pointed out that "his position was at odds with express statutes." But a few days later, Westenberger demanded that Stratus's lawyer make himself, or the Stratus witnesses, "unavailable in order to keep the depositions from proceeding." In light of this request, Stratus's lawyer declined further discussions with Westenberger on the topic, because "[i]f I am ever asked whether I participated in a conversation in which a plan to obstruct Chevron's subpoenas was considered, I want to be able to say no." In the same email, Stratus's lawyer noted that Westenberger "instructed us not to divulge his firm's involvement," a full six months before Tyrrell would falsely tell the Second Circuit that Patton Boggs "only came into the case last Thursday." These bad faith tactics by Patton Boggs are in keeping with the "fundamental principle of [the conspirators'] strategy as outlined by Jim [Tyrrell]"—"we gain a greater advantage by fighting [Chevron] on everything, and tying them up, than in conceding any one thing even if we expect to ultimately lose that one thing down the road." Ex. 4. As this Court recently found, Patton Boggs's tactics in seeking to "prevent the disclosure of the Stratus documents that confirmed that Stratus had written all or most of the Cabrera report . . . establishes probable cause to suspect that the LAPs committed wire fraud and obstructed justice in that respect." Case No. 1:11-cv-691, Dkt. 905 at 62.

8

Chevron does not bring this motion in bad faith, and has not unduly delayed the filing of its counterclaims. Where discovery has not yet commenced, and this Court has not yet ruled on Patton Boggs's objections to Magistrate Judge Francis's report and recommendation to dismiss Patton Boggs's claims, Chevron's proposed counterclaims will not cause a delay. Chevron, therefore, has not unduly delayed the bringing of its counterclaims and Patton Boggs will not be prejudiced. *See Block*, 988 F.2d at 350.

## CONCLUSION

For the foregoing reasons, the Court should grant Chevron's motion for leave to amend to assert counterclaims.

Dated: May 10, 2013

Respectfully submitted,

By: \_\_\_\_/s/ Randy M. Mastro_____

Randy M. Mastro, Esq.
Andrea E. Neuman, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Herbert J. Stern, Esq.
Joel M. Silverstein, Esq.
STERN & KILCULLEN, LLC
325 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone: 973-535-1900
Facsimile: 973-535-9664

*Attorneys for Chevron Corporation*