Kaplan, J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

PATTON BOGGS LLP,

         Plaintiff and Counterclaim Defendant,

    v.

CHEVRON CORPORATION,

         Defendant and Counterclaimant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 5/7/14

Case No. 12-cv-9176 (LAK)

RECEIVED
MAY 07 2014
JUDGE KAPLAN'S CHAMBERS

## STIPULATION AND [PROPOSED] ORDER OF DISMISSAL WITH PREJUDICE

                WHEREAS, the parties to this action entered into a Settlement and Release Agreement (the "Settlement Agreement") dated May 7, 2014, a copy of which is attached hereto as Exhibit A;

                IT IS NOW HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, and subject to the approval of the Court, as follows:

                1.      This action is dismissed pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, with prejudice and without costs to any party;

                2.      This Court shall retain jurisdiction over the parties to this stipulation for purposes of enforcing the Settlement Agreement and for purposes of deciding any claim of breach of the Settlement Agreement.

                3.      This Stipulation may be signed in counterparts, all of which together shall constitute a single document, and facsimile or pdf signatures shall be deemed originals.

Dated: New York, New York
       May 7, 2014

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

By: _____
Elkan Abramowitz
Edward M. Spiro
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600

James K. Leader
LEADER & BERKON LLP
630 Third Avenue, 17th Floor
New York, New York 10017
Telephone: (212) 486-2400

*Attorneys for Patton Boggs LLP*

GIBSON DUNN & CRUTCHER LLP

By: _____
Randy M. Mastro
Andrea E. Neuman
Anne Champion
200 Park Avenue
New York, New York 10166-0193
Tel: (212) 351-4000

STERN & KILCULLEN

By: _____
Herbert J. Stern
Joel M. Silverstein
325 Columbia Turnpike, Suite 110
Florham Park, New Jersey 07932-0992
Tel: (973) 535-1900

*Attorneys for Chevron Corporation*

SO ORDERED this __7th__ day of May, 2014.

_____
Hon. Lewis A. Kaplan
United States District Judge

The Clerk of the Court Shall
mark this action closed and all
pending motions denied as moot.

SO ORDERED:

_____
LORETTA A. PRESKA, U.S.D.J.

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By:_____
    Elkan Abramowitz
    Edward M. Spiro
    565 Fifth Avenue
    New York, New York 10017
    Tel: (212) 856-9600

    James K. Leader
    LEADER & BERKON LLP
    630 Third Avenue, 17th Floor
    New York, New York 10017
    Telephone: (212) 486-2400

    *Attorneys for Patton Boggs LLP*

GIBSON DUNN & CRUTCHER LLP

By:_____
    Randy M. Mastro
    Andrea E. Neuman
    Anne Champion
    200 Park Avenue
    New York, New York  10166-0193
    Tel: (212) 351-4000

STERN & KILCULLEN

By:_____
    Herbert J. Stern
    Joel M. Silverstein
    325 Columbia Turnpike, Suite 110
    Florham Park, New Jersey  07932-0992
    Tel: (973) 535-1900

    *Attorneys for Chevron Corporation*

SO ORDERED this _____ day of May, 2014.

_____
    Hon. Lewis A. Kaplan
    United States District Judge

# EXHIBIT A

<u>SETTLEMENT AND RELEASE AGREEMENT</u>

This Settlement and Release Agreement (the "Agreement") is entered into this 7th day of May, 2014, by and between Chevron Corporation ("Chevron") and Patton Boggs LLP ("Patton Boggs"). Patton Boggs and Chevron are referred to collectively hereinafter as the "Parties," or each, a "Party."

<u>WITNESSETH</u> :

WHEREAS, a suit entitled *María Aguinda y Otros v. Chevron Corporation*, Case No. 002-2003 (the "Lago Agrio Litigation"), was filed on behalf of a group of plaintiffs (the "Lago Agrio Plaintiffs" or "LAPs") against Chevron in the Provincial Court of Justice of Sucumbíos, Ecuador on May 7, 2003, relating to oil production activities conducted in Ecuador, and resulted in a first instance judgment issued against Chevron on February 14, 2011, in the amount of approximately $18,200,000,000, which was later reduced on appeal to approximately $9,500,000,000 (the "Lago Agrio Judgment");

WHEREAS, Patton Boggs represented or advised the LAPs in connection with litigation relating to the Lago Agrio Litigation, including in connection with efforts to enforce the Lago Agrio Judgment;

WHEREAS, Patton Boggs entered into certain engagement agreements with the LAPs confirmed in writings dated May 5, 2010, July 12, 2010, June 25, 2011 and September 11, 2012 (the "Engagement Agreements") which determined, *inter alia*, the compensation due to Patton Boggs in exchange for representing the LAPs;

WHEREAS, on or about October 31, 2010, Patton Boggs and others entered into an agreement (the "Intercreditor Agreement") for purposes of determining the order in which the



- 1 -

relevant parties (including Patton Boggs) would be paid any proceeds from the Lago Agrio Judgment;

WHEREAS, the Engagement Agreements and the Intercreditor Agreement provide that Patton Boggs is entitled to receive certain hourly fees and costs and a portion of any proceeds of the Lago Agrio Judgment;

WHEREAS, Patton Boggs has documents reflecting that it is entitled to receive up to 5% of any proceeds of the Lago Agrio Judgment, in addition to recovering all of its accrued costs and unpaid fees;

WHEREAS, on February 1, 2011, Chevron filed the action entitled *Chevron Corporation v. Donziger et al.*, 11 Civ. 0691 (LAK), in the United States District Court for the Southern District of New York (the "RICO Litigation"), alleging claims pursuant to the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d), and state law claims, including fraud, tortious interference, and unjust enrichment, against the LAPs and certain of their attorneys (including Steven Donziger), representatives, and consultants as party defendants, but Patton Boggs was not named as a party defendant in that action;

WHEREAS, on March 7, 2011, the court in the RICO Litigation entered a preliminary injunction restraining defendants in the RICO Litigation and others acting in concert with them from seeking to enforce the Lago Agrio Judgment and pursuant to Rule 65 of the Federal Rules of Civil Procedure ordered Chevron to post a $21.8 million bond in connection with that injunction;

WHEREAS, on September 19, 2011, the United States Court of Appeals for the Second Circuit vacated the preliminary injunction in the RICO Litigation;

- 2 -



WHEREAS, in connection with Patton Boggs' representation of the LAPs, on February 15, 2012, Patton Boggs commenced an action against Chevron, which was originally filed in the United States District Court for the District of New Jersey, seeking, among other relief, to recover on the preliminary injunction bond ordered in the RICO Litigation, and that action was then ordered transferred, and is now pending in the United States District Court for the Southern District of New York as *Patton Boggs LLP v. Chevron Corporation*, 12 Civ. 9176 (LAK) (the "Patton Boggs Litigation");

WHEREAS, both the RICO Litigation and the Patton Boggs Litigation are before United States District Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York ("this Court");

WHEREAS, on April 2, 2012, this Court exonerated the preliminary injunction bond in the RICO Litigation, and Patton Boggs appealed that order as a non-party appellant, which appeal is now pending before the United States Court of Appeals for the Second Circuit in an action entitled *Chevron Corporation v. Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*, Index Nos. 12-1959-CV(L), 12-1260-CV(Con) (2d Cir.) (the "Bond Appeal");

WHEREAS, on March 4, 2014, in the RICO Litigation, this Court issued an opinion and judgment (the "RICO Judgment") finding that Donziger and other defendants had engaged in fraud and criminal conduct in connection with the Lago Agrio Litigation and that the Lago Agrio Judgment had been obtained by fraudulent and illegal means;

WHEREAS, the RICO Judgment bars, among other things, any effort on the part of Donziger and other defendants to enforce the Lago Agrio Judgment in the United States or to profit from it;

WHEREAS, an appeal from the RICO Judgment is pending;

WHEREAS, on March 31, 2014, in the Patton Boggs Litigation, this Court granted Chevron leave to file counterclaims against Patton Boggs, and Chevron then filed counterclaims against Patton Boggs;

WHEREAS, on April 29, 2014, in the Patton Boggs Litigation, this Court entered an order dismissing all of Patton Boggs' claims against Chevron;

WHEREAS, actions seeking to enforce the Lago Agrio Judgment are pending in Argentina, Brazil, Ecuador, and Canada; and

WHEREAS, the Parties desire to settle the Patton Boggs Litigation and any other disputes outstanding between them on the terms and conditions set forth herein without any admission of liability by any Party;

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES SET FORTH HEREIN, IT IS HEREBY AGREED, by and among the Parties, as follows:

1.    Assignment.  Patton Boggs hereby irrevocably assigns to Chevron (or any party designated by Chevron) all right, claim, title, and interest in or to any payment which Patton Boggs now has or in the future may have pursuant to the Engagement Agreements or the Intercreditor Agreement. In the event that any third party asserts that such assignment is ineffective based on the terms of the Intercreditor Agreement or otherwise, any payment received by or on behalf of Patton Boggs pursuant to the Engagement Agreements or the Intercreditor Agreement shall promptly be paid over by Patton Boggs to Chevron (or any party designated by Chevron).  Patton Boggs makes no representations or warranties regarding whether the Engagement Agreements or the Intercreditor Agreement are legally enforceable by Patton Boggs or by Chevron as its assignee.

- 4 -



2.      Representation of the LAPs.

(a)      In light of the findings set forth in the RICO Judgment, each of the Patton Boggs Releasees (as that term is defined below at Section 7) irrevocably agrees that he, she or it will decline to assist in any way any party, including the LAPs, in any effort to enforce the Lago Agrio Judgment or in any litigation against Chevron relating to the same subject matter as the Lago Agrio Litigation.  This undertaking is made in express reliance upon the factual findings of fraudulent and illegal conduct made in the RICO Judgment.  In addition, Patton Boggs shall withdraw promptly as counsel of record in any proceeding in which it has appeared involving litigation against Chevron relating to the same subject matter as the Lago Agrio Litigation.

(b)      Compliance by the Patton Boggs Releasees with their obligations to the LAPs, as former clients, under applicable law and the Rules of Professional Conduct, with respect to transitional matters such as turning over its file concerning representation of the LAPs or a copy thereof to counsel designated by the LAPs or their representatives and communicating with the LAPs and their designated counsel concerning the transition to successor counsel, shall not constitute a breach of this Section 2.

(c)      In the event that, from and after the date of this Agreement, any Patton Boggs Releasee violates this Section 2 by assisting any party (including, without limitation, the LAPs) in any effort to enforce the Lago Agrio Judgment or in any litigation against Chevron relating to the same subject matter as the Lago Agrio Litigation, or seeks to have this Section 2 declared invalid for any reason in any court of competent jurisdiction, (1) any release provided to that Patton Boggs Releasee pursuant to this Agreement shall be null and void, and (2) as to that Patton Boggs Releasee, the statute of limitations on any actual or potential claim that was subject to such voided release shall be deemed tolled throughout the period from the date of this

- 5 -



Agreement through the date on which Chevron has actual notice of such violation of, or attempt to declare invalid, this Section 2.

3.     Settlement Payment.  By no later than 30 days after the date of this Agreement, Patton Boggs shall pay or cause to be paid to Chevron, by wire transfer in accordance with directions provided by Chevron's attorneys, the sum of $15,000,000 ("the Settlement Payment").

4.     Dismissal of the Litigation. Simultaneously with the execution of this Settlement Agreement, Patton Boggs and Chevron have executed a Stipulation of Dismissal with Prejudice, in the form annexed hereto as Exhibit 1 (the "Stipulation of Dismissal"), which Chevron shall cause to be filed promptly in this Court. This Settlement Agreement shall be annexed to and filed with the Stipulation of Dismissal. Patton Boggs and Chevron agree to jointly and promptly request that the Stipulation of Dismissal be so ordered by this Court.  As provided in the Stipulation of Dismissal, the dismissal of the Patton Boggs Litigation is without costs to any party. Patton Boggs also agrees to execute a dismissal agreement for the Bond Appeal pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure, and to attempt to secure consent and joinder of its co-Appellants, Hugo Gerardo Camacho Naranjo, Javier Piaguaje Payaguaje to such an agreement, or in the alternative, to file a motion seeking to dismiss the Bond Appeal with prejudice.

5.     Cooperation with Discovery.  Promptly upon execution of this Agreement, Chevron shall take discovery from the Patton Boggs Releasees only as specified in this Section (the "Discovery"). The Patton Boggs Releasees agree to cooperate with the Discovery only as follows and only for a period of time reasonably sufficient for completion of the Discovery:

(a)     Within a reasonable time after the date of this Agreement, James E. Tyrrell, Jr. and Eric S. Westenberger shall each make himself available for a deposition (each, a

"Deposition" and collectively the "Depositions") to be conducted in New York, at the offices of

Chevron's counsel, Gibson Dunn & Crutcher LLP. Each Deposition shall be limited to one day

of seven hours. The Depositions shall be supervised by a court-appointed special master

appointed by this Court.

   (b) Within a reasonable time after the execution of this Agreement, Chevron

shall serve document requests of which the subject matter will be litigation and enforcement

funding, the identification of legal representatives associated with litigation and enforcement,

international enforcement efforts, and documents previously produced by Patton Boggs in

redacted form in the RICO Litigation or any other Chevron-related litigation or proceeding.

Patton Boggs shall produce documents responsive to the document requests in a timely manner,

provided that Patton Boggs shall not be required to produce documents it has previously

produced to Chevron, whether in the RICO Litigation or any other litigation or proceeding,

unless previously produced in redacted form. If material in such documents was redacted due

any privilege or work product protection, Chevron may seek a determination from this Court

concerning privilege or work product protection, and Patton Boggs will produce unredacted

versions of such documents if so ordered by this Court.

   (c) The Patton Boggs Releasees shall cooperate with Chevron in connection

with the Discovery subject to all applicable Rules of Professional Conduct. Patton Boggs shall

inform the LAPs of the Depositions and the document requests and the LAPs shall be afforded

an opportunity to assert any privilege or work product protection that may attach to any

information sought to be discovered, subject to Chevron's right to seek a determination from this

Court that any privilege or work product protection is inapplicable for any reason.



(d)     Patton Boggs shall bear its own costs in connection with the Discovery except that the cost of the special master supervising the Depositions shall be shared equally by Patton Boggs and Chevron.

(e)     The Patton Boggs Releasees reserve the right to seek a confidentiality order, consistent with the terms of Federal Rule of Civil Procedure 26(c), to govern the Discovery.

(f)     When Chevron concludes that the Discovery is complete, it shall give notice thereof to Patton Boggs ("Chevron's Notice of Completion").  If, at any time prior to receipt of Chevron's Notice of Completion, Patton Boggs determines that a period of time reasonably sufficient for the completion of the Discovery has passed, it may give notice thereof to Chevron ("Patton Boggs's Notice of Completion").

6.      <u>Disputes Concerning the Discovery</u>.

(a)     The releases provided in Section 7 become effective as of the date of this Agreement, but may be voided with respect to any Patton Boggs Releasee who violates Section 2 above, or with respect to any Patton Boggs Releasee that is determined, in accordance with the procedure set forth in this Section 6, not to have cooperated in good faith with the Discovery.

(b)     As set forth in Section 5, above, the Patton Boggs Releasees agree to cooperate with the Discovery for a reasonable period of time.  Upon receipt by Chevron of Patton Boggs's Notice of Completion, Chevron shall have ten (10) days to notify Patton Boggs that it has made a good faith and objectively reasonable conclusion that one or more of the Patton Boggs Releasees has willfully failed to cooperate in good faith in connection with the Discovery (a "Notice of Failure to Cooperate").  Any Notice of Failure to Cooperate shall



identify which of the Patton Boggs Releasees Chevron regards as having willfully failed to cooperate.

(c)    To the extent that Chevron provides a Notice of Failure to Cooperate to any of the Patton Boggs Releasees, the notice shall specify in detail the nature of any claimed failure to cooperate and the subject Patton Boggs Releasee or Patton Boggs Releasees, as the case may be, shall have 10 days to cure any claimed failure to cooperate.  Upon the completion of time provided for cure, Chevron shall give notice to Patton Boggs and to the subject Patton Boggs Releasee or Patton Boggs Releasees either that the subject of any Notice of Failure to Cooperate has cured such failure (a "Notice of Cure") or that the failure has not been cured (a "Notice of Dispute").

(d)    To the extent that any Patton Boggs Releasee is the subject of a Notice of Dispute, the question whether the Patton Boggs Releasee has, or Patton Boggs Releasees have, willfully failed to cooperate will be determined by this Court, in accordance with the law and rules applicable in that forum to discovery disputes.  In the event that the issue raised by the Notice of Dispute is determined in favor of Chevron in accordance with the foregoing procedure:

    i.   the release provided by Section 7 of this Agreement shall be deemed null and void with respect to the Patton Boggs Releasee or Patton Boggs Releasees identified as the subject of the Notice of Dispute, unless, within 10 days of such determination in favor of Chevron, such Patton Boggs Releasee or Patton Boggs Releasees cure any willful lack of cooperation to the satisfaction of the court that made the determination;



     ii.   any determination by the court that satisfactory cure has not been made shall be subject to final determination on appeal before any release shall be deemed void; and

     iii.   the statute of limitations on any actual or potential claim that was subject to any release deemed null and void pursuant to Section 6(d)(i), *supra*, shall be deemed tolled throughout the period from the date of this Agreement through the *later* of (x) 10 days after the date on which the Notice of Dispute is determined in favor of Chevron, or (y) the date of any "final determination on appeal" referenced in Section 6(d)(ii), *supra*.

7.     Mutual Releases.

     (a)    Defined Terms.

     i.   "Chevron Releasees" shall refer to Chevron, and to all of its past and present, direct and indirect, parents, subsidiaries, and affiliates; the predecessors, successors and assigns of Chevron; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

     ii.   "Patton Boggs Releasees" shall refer to Patton Boggs and affiliates (including but not limited to Breaux Lott Leadership Group LLC) and their respective predecessors, successors, and assigns, and to each and all of their present and former principals, partners, associates, counsel, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. Each of the Patton Boggs Releasees is a "Patton Boggs Releasee."

(b)    <u>Mutual Releases Between Chevron and Patton Boggs</u>. The Chevron Releasees and the Patton Boggs Releasees do hereby forever mutually release, discharge, and acquit any claims, demands, actions, causes of action, suits, rights, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, omissions, agreements, promises, variances, trespasses, damages, liabilities, judgments, extents, executions and demands whatsoever, of any type or kind, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether arbitrable or non-arbitrable, whether sounding in contract, tort, or otherwise, and whether arising at law, in equity, or otherwise, which they ever had, now have or hereafter shall or may acquire against each other for, upon or by reason of any matter, cause or thing whatsoever from the beginning of time to the date of this Agreement relating to, arising from, or concerning the subject matter of: (i) the Lago Agrio Litigation; (ii) the RICO Litigation; (iii) the Patton Boggs Litigation, including any claims that were asserted or could have been asserted; (iv) the Bond Appeal; (v) any Section 1782 proceedings brought by Chevron in connection with the Lago Agrio Litigation or any related proceedings; (vi) any proceedings or other efforts to enforce the Lago Agrio Judgment; (vii) Patton Boggs' representation of the LAPs; or (viii) Patton Boggs' representation of Chevron, including the Breaux Lott Leadership Group's representation of Chevron.

(c)    <u>Waiver of Cal. Civ. Code § 1542</u>. The Parties have been advised of and acknowledge that they are familiar with the provisions of Section 1542 of the California Civil Code.  Section 1542 states:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Notwithstanding their knowledge of this provision, the Parties expressly waive any rights that they may have thereunder, as well as under any other statutes or common law principles of similar effect.  The Parties to this Agreement expressly state that, notwithstanding the provisions of Cal. Civ. Code § 1542, they expressly intend that the releases given above shall extend to claims that the releasing parties do not know or suspect to exist in their favor at the time the releases set forth herein are executed or otherwise become effective, whether or not knowledge of such claims would have materially affected their settlement with the other Parties hereto.

   8. <u>Approved Public Statement by Patton Boggs</u>.  Upon the date of execution of this agreement by both parties, Patton Boggs shall issue the following public statement that same day, and provide a simultaneous copy to Chevron's counsel, in the following form, and make no other public statement besides this one:

> Today's resolution of our firm's disputes with Chevron ends our involvement in the Lago Agrio matter. The recent opinion of the United States District Court for the Southern District of New York in the *Chevron v. Donziger* case includes a number of factual findings about matters which would have materially affected our firm's decision to become involved and stay involved as counsel here. Based on the Court's findings, Patton Boggs regrets its involvement in this matter.

Patton Boggs shall require that any prospective merger partner or successor firm to Patton Boggs comply with this provision and refrain from making any other public statement regarding this Agreement.

   9. <u>Non-Disparagement</u>.  Chevron agrees that it will not make or cause to be made any statements related to matters subject to the release set forth in Section 7(b) that disparage, are inimical to, or damage the reputation of any of the Patton Boggs Releasees, and Patton Boggs agrees that it will not make or cause to be made any statements related to matters subject to the release set forth in Section 7(b) that disparage, are inimical to, or damage the reputation of any of

the Chevron Releasees; provided, however, that to the extent any statements, whether made in court or out of court, are subject to a litigation privilege, whether embodied in the common law or N.Y. Civil Rights Law § 74, such statements shall not violate this provision.

      10.   <u>Representations and Warranties</u>.

      (a)   <u>By Patton Boggs</u>.  Patton Boggs represents and warrants to Chevron as follows:

      i.   Patton Boggs is duly organized, validly existing, and in good standing under the laws of the jurisdiction where it is organized, and has full power, right, and authority to enter into this Agreement and to settle and release fully and completely all claims to be settled and released pursuant to this Agreement, by the signature of the individual signing on its behalf.

      ii.   The execution, delivery, and performance by Patton Boggs of this Agreement are within Patton Boggs' powers and have been duly authorized by Patton Boggs. This Agreement is the legal, valid, and binding obligation of Patton Boggs and enforceable against it in accordance with its terms.

      (b)   <u>By Chevron</u>.  Chevron represents and warrants to Patton Boggs as follows:

      i.   Chevron is duly organized, validly existing, and in good standing under the laws of the jurisdiction where it is organized, and has full power, right, and authority to enter into this Agreement and to settle and release fully and completely all claims to be settled and released pursuant to this Agreement, by the signature of Chevron's counsel signing on its behalf.



   ii.  The execution, delivery, and performance by Chevron of this Agreement are within Chevron's powers and have been duly authorized by Chevron.  This Agreement is the legal, valid, and binding obligation of Chevron and enforceable against it in accordance with its terms.

   11. Notices.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given either (a) upon actual receipt or three (3) days after deposit in the United States mail, registered or certified mail, postage prepaid, return receipt requested; (b) upon actual receipt if sent via reputable overnight courier; or (c) upon actual confirmation of receipt, if by email.  All notices shall be addressed as follows:

If to Chevron:

    Randy M. Mastro
    Andrea E. Neuman
    Gibson, Dunn & Crutcher LLP
    200 Park Avenue
    New York, NY 10166
    rmastro@gibsondunn.com
    aneuman@gibsondunn.com

If to Patton Boggs:

    Elkan Abramowitz
    Edward M. Spiro
    Morvillo Abramowitz Grand Iason & Anello P.C.
    565 Fifth Avenue
    New York, NY 10017
    eabramowitz@maglaw.com
    espiro@maglaw.com

   12. Successors in Interest.  The Parties agree that this Agreement shall be binding upon the Parties and, as applicable, their heirs, executors, administrators, dependents, predecessors, successors, subsidiaries, divisions, alter egos, affiliated corporations, and related entities, and their present officers, directors partners, employees, attorneys, assigns, agents, representatives, and any or all of them, and any past officers, directors, partners, employees, attorneys, assigns, agents, or representatives, including in Patton Boggs' case, any successor law

firm with which the Patton Boggs partnership, in whole or in substantial part, merges, joins or otherwise becomes affiliated.

13.     No Assignment.  Each Party warrants and represents that it has not assigned or transferred to any other person any of the claims, causes of action, or other matters that are released by this Agreement.

14.     No Third Party Beneficiaries.  Except as expressly provided in Sections 7 and 9, nothing contained in this Agreement, expressed or implied, is intended to confer upon any person or entity other than the Parties hereto any benefits, rights, or remedies.

15.     Entire Agreement.  This Agreement contains the entire Agreement and understanding concerning the subject matter of the Agreement between the Parties, and supersedes and replaces all prior negotiations, and proposed settlement agreements, written or oral.  Each of the Parties to this Agreement acknowledges that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement to induce any Party to execute this Agreement. The Parties further acknowledge that they are not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

16.     Advice of Counsel.  Each Party acknowledges that it has been represented by and consulted with, or had the opportunity to be represented by and consult with, independent legal counsel prior to signing this Agreement, and that it has executed this Agreement with the consent of and upon the advice of such counsel, or that it has had the opportunity to seek such consent and advice prior to signing this Agreement.  Each Party acknowledges that it has read and understood this Agreement and the releases contained herein before signing, assents to all the terms and conditions contained in this Agreement without any reservations, and has had, or

- 15 -



has had the opportunity to have had, the same explained by its own counsel, who have answered any and all questions which have been asked of them, or which could have been asked of them, with regard to the meaning of any of the provisions of this Agreement. Each Party acknowledges that, each Party having participated in the drafting of this Agreement, the general rule of construction to the effect that any ambiguities in an agreement are to be resolved against the party drafting the agreement shall not apply to the construction or interpretation of this Agreement.

17.     No Admissions.  By entering into this Agreement, no Party intends to make, nor shall be deemed to have made, any admission of any kind.  The Parties agree that they are entering into this Agreement to avoid the costs of further litigation and to settle potential disputes between the Parties.  This Agreement is the product of informed negotiations and compromises of previously stated legal positions.  Nothing contained in this Agreement shall be construed as an admission by any Party as to the merit or lack of merit of any particular claim or defense. Any statements made in the course of negotiations have been and shall be without prejudice to the rights of the Parties in any disputes or transactions with any other person or entity not party to this Agreement.

18.     Attorneys' Fees, Costs, and Expenses.  Each Party shall bear its own attorneys' fees, costs, and expenses incurred in connection with this Agreement, including any future costs associated with compliance with this Agreement, except with respect to the costs associated with the supervision of the Depositions by the special master, as set forth in Section 5.

19.     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without consideration of conflict of laws.

20.     Exclusive Jurisdiction.  The Parties hereby stipulate and agree that any and all disputes concerning this Agreement, including disputes regarding the interpretation and enforcement thereof, shall, if necessary, be determined by this Court pursuant to the Stipulation of Dismissal.  The Parties further agree and consent specifically to the exercise of jurisdiction over the performance and enforcement of this Agreement by this Court.

21.     Severability.  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable for any reason, the remaining provisions not so declared shall nevertheless continue in full force and effect, but shall be construed in such a manner so as to effectuate the intent of this Agreement as a whole, notwithstanding such stricken provision or provisions.  The Parties agree that in the event any part of this Agreement is rendered or declared invalid or unenforceable, they will negotiate, in good faith, to agree on a permitted replacement part that reflects their original intent.

22.     Headings.  The headings of the sections in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning of terms contained herein.

23.     Waiver.  No Party to this Agreement may be deemed to have waived compliance with any provision of this Agreement, except by an instrument in writing signed by the Party against whom the waiver is asserted.

24.     Modification.  This Agreement may not be altered, amended, modified, or otherwise changed in any respect, except by a writing duly executed by the Parties.

25.     Counterparts and Facsimile or PDF Signatures.  This Agreement may be executed simultaneously or in counterparts, each of which will be deemed an original, but both of which together will constitute one and the same instrument.  True and correct copies of signed

counterparts may be used in place of the originals for any purpose, and facsimile or PDF
signatures will have the same binding force and effect as original signatures.

　　　　IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first
set forth above.

　　　　　　　　　　　　　　　　Chevron Corporation

　　　　　　　　　　　　　　　　By:_____
　　　　　　　　　　　　　　　　Name:  Herbert J. Stern
　　　　　　　　　　　　　　　　Title:  Outside Counsel

　　　　　　　　　　　　　　　　By:_____
　　　　　　　　　　　　　　　　Name: Randy M. Mastro
　　　　　　　　　　　　　　　　Title:  Outside Counsel

　　　　　　　　　　　　　　　　Patton Boggs LLP

　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　Name:  Edward J. Newberry
　　　　　　　　　　　　　　　　Title:    Managing Partner

counterparts may be used in place of the originals for any purpose, and facsimile or PDF signatures will have the same binding force and effect as original signatures.

      IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

                   Chevron Corporation

                   By: _____
                   Name:  Herbert J. Stern
                   Title:  Outside Counsel

                   By: _____
                   Name:  Randy M. Mastro
                   Title:  Outside Counsel

                   Patton Boggs LLP

                   By: _____
                   Name:  Edward J. Newberry
                   Title:    Managing Partner

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
PATTON BOGGS LLP,                               :
                                                :
            Plaintiff and Counterclaim Defendant, :
                                                :    Case No. 12-cv-9176 (LAK)
        v.                                      :
                                                :
CHEVRON CORPORATION,                            :
                                                :
            Defendant and Counterclaimant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## STIPULATION AND [PROPOSED] ORDER OF DISMISSAL WITH PREJUDICE

WHEREAS, the parties to this action entered into a Settlement and Release Agreement (the "Settlement Agreement") dated May 7, 2014, a copy of which is attached hereto as Exhibit A;

IT IS NOW HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, and subject to the approval of the Court, as follows:

1.      This action is dismissed pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, with prejudice and without costs to any party;

2.      This Court shall retain jurisdiction over the parties to this stipulation for purposes of enforcing the Settlement Agreement and for purposes of deciding any claim of breach of the Settlement Agreement.

3.      This Stipulation may be signed in counterparts, all of which together shall constitute a single document, and facsimile or pdf signatures shall be deemed originals.

Dated: New York, New York
       May 7, 2014

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

By:_____
    Elkan Abramowitz
    Edward M. Spiro
    565 Fifth Avenue
    New York, New York 10017
    Tel: (212) 856-9600

    James K. Leader
    LEADER & BERKON LLP
    630 Third Avenue, 17th Floor
    New York, New York 10017
    Telephone: (212) 486-2400

    *Attorneys for Patton Boggs LLP*

GIBSON DUNN & CRUTCHER LLP

By: _____
    Randy M. Mastro
    Andrea E. Neuman
    Anne Champion
    200 Park Avenue
    New York, New York  10166-0193
    Tel: (212) 351-4000

STERN & KILCULLEN

By: _____
    Herbert J. Stern
    Joel M. Silverstein
    325 Columbia Turnpike, Suite 110
    Florham Park, New Jersey  07932-0992
    Tel: (973) 535-1900

    *Attorneys for Chevron Corporation*

SO ORDERED this _____ day of May, 2014.


_____
    Hon. Lewis A. Kaplan
    United States District Judge