**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

PATTON BOGGS LLP,

*Plaintiff and Counterclaim Defendant,*

v.

CHEVRON CORPORATION,

*Defendant and Counterclaimant.*

Case No. 12-cv-9176 (LAK)

---

**MOTION OF NON-PARTIES HUGO CAMACHO NARANJO, JAVIER
PIAGUAJE PAYAGUAJE AND STEVEN DONZIGER TO INTERVENE
AND OBJECT TO THE APPROVAL OF THE PATTON BOGGS–
CHEVRON SETTLEMENT**

Public confidence in lawyers, and in turn our legal system, depends on the lawyer's undying duties of loyalty and confidentiality to the client. In the history of American law firms, it is hard to come up with a more flagrant breach of those duties than the settlement in this case.

Patton Boggs assumed a duty of loyalty when it agreed to represent Ecuadorian indigenous people and farmers in their epic legal battle to hold Chevron accountable for decades of extensive, life-threatening oil pollution in the Amazon rainforest. These vulnerable people counted on the good work of the able lawyers at Patton Boggs to help them protect their rights. Instead, Patton Boggs has become Chevron's latest victim. Faced with the threat of scorched-earth litigation fueled by the oil giant's bottomless war chest, this once-proud American law firm has sold its clients down the river. There is no way to sugarcoat it: Patton Boggs has put its own interests above those of the people it was supposed to represent, switched sides in the middle of a hotly contested legal dispute, unceremoniously abandoned the clients without so much as notifying them, and publicly expressed regret at having taken on their representation in the first

1

place. And it has even agreed to cooperate with Chevron in discovery, so that Chevron may use what it finds against the firm's former clients.

No court should place its imprimatur on such a rotten deal. For the reasons explained in this motion, Hugo Camacho Naranjo and Javier Piaguaje Payagauje (often referred to by this Court as the "Lago Agrio Plaintiffs" or "LAPs") and one of their attorneys, Steven R. Donziger, hereby seek leave to intervene in this action for the purposes of seeking reconsideration of this Court's decision (Dkt. 81) to enter the parties' Stipulation and Order of Dismissal with Prejudice ("Stipulated Order") and thereby approve a settlement agreement ("the Agreement"; Dkt. 81 at Ex. A) that on its face contemplates severe violations by Patton Boggs of applicable rules of professional responsibility and grievously injures Proposed Intervenors' rights.

## FACTUAL BACKGROUND

Here are the facts on which this motion rests:

- Patton Boggs and Chevron publicly announced their settlement agreement in the form of a Chevron press release on May 7, 1014, that was distributed widely to the media, *see* Ex. A, Declaration of Pablo Fajardo dated May 20, 2014, at ¶ 8; Ex. B, Chevron Press Release dated May 7, 2014;

- That same day, the Ecuadorian clients of Patton Boggs learned about the settlement via media reports without even a single communication from Patton Boggs, *see* Ex. A, Fajardo Decl. at ¶¶ 8-9;

- To this day, Patton Boggs has not even provided a copy of the settlement agreement to its Ecuadorian clients, much less a translated copy of it, a necessity given that none of the clients speak or read English, *id.* at ¶ 10;

- Patton Boggs never notified its Ecuadorian clients in advance that it was withdrawing its representation, and to this day has never notified them in writing that it has withdrawn its representation, *id.* at ¶¶ 7-8;

- Patton Boggs agreed to provisions that represent flagrant violations of the Code of Professional Responsibility, including the failure to communicate with its clients, failure to take steps to avoid prejudice, violations of the duty of confidentiality, and the release of a public statement of "regret" that flogs its own clients, Dkt. 81 at Ex. A;

- The statement of "regret" contradicts repeated assurances by the firm's lawyers that they believed the judgment in Ecuador was based on valid evidence, that Chevron's attack on it through the RICO proceeding was legally and factually flawed and likely to be reversed on appeal, and that foreign enforcement courts would likely enforce the judgment, *see* Ex. A, Fajardo Decl. at ¶¶ 6, 9;

- The Ecuadorians have taken steps to notify Patton Boggs of their objections to its course of conduct and have to date received no response, *see* Ex. E, Letter from Humberto Piaguaje, Pablo Fajardo, and Juan Pablo Saenz to Edward Newberry and Charles Talisman dated May 19, 2014.

In summary, Patton Boggs apparently has agreed to something unprecedented in the legal profession: the announcement of a withdrawal of representation in the press without first notifying its clients, and the release of a public statement trashing its own clients as a condition of settlement imposed by its adversary. That Patton Boggs did this to pave the way for a merger with another law firm, *see* Ex. C, David McAfee, *Squire Sanders, Patton Boggs Merger Deal Nears Completion*, Law360, May 20, 2014—that is, to secure a benefit for its partnership at the expense of its own clients—makes the violations all the more troubling.

Mssrs. Camacho and Piaguaje and the affected Ecuadorian communities have now been almost fully abandoned by U.S. counsel on account of Chevron's campaign of litigation harassment against virtually everyone who has dared to support the affected Ecuadorian communities. The specific intent of this "bad faith, legally-futile, and vexatious stratagem" in this case has always been, as Patton Boggs itself summarized in its most recent filing here:

> to divert the resources of the Ecuadorian Plaintiffs' counsel, pressure Patton Boggs [] to abandon its clients as the result of unfavorable press, and ultimately deter any other lawyers who might otherwise be inclined to represent the Ecuadorian Amazon communities . . .

Dkt. 65 at 1. It would be hard to improve upon Patton Boggs's own words. And it is hard to avoid the conclusion that the firm has indeed, in its words, given into the "pressure" to "abandon its clients," treating them as an afterthought in a package deal to cleanse the firm of liability, grease the path toward a merger, and boost partner profits all around.

It is a sad commentary on our legal system that Chevron's strategy has succeeded so spectacularly. Absent the unethical settlement agreement submitted for approval to this Court, Patton Boggs (and its proposed merger partner) would face years of uncompensated litigation costs fending off Chevron's attacks. Prior litigation counsel for both Mssrs. Camacho and Piaguaje and Donziger were forced to withdraw—not, as Chevron would like the world to believe, due to any concern about the merits of the underlying case but rather, as stated in sworn declarations of counsel, due to this Court's "implacable hostility" toward the defendants and counsel's inability to compete with Chevron's "legal blitzkrieg" and strategy of "scorched-earth litigation, executed by its army of hundreds of lawyers, [designed] to crush defendants and win this case through might rather than merit."[1] After Chevron's brutal treatment of Patton Boggs and other counsel, Mr. Donziger has been unable to find other counsel willing to represent Mssrs. Camacho and Piaguaje or the Ecuadorian Amazon communities even for the limited purpose of challenging entry of this facially unethical settlement agreement. Proposed Intervenors thus appear before the Court to represent both their interests and Mr. Donziger's.[2]

This Court should not place its stamp of approval on what amounts to an abandonment of indigent clients by a wealthy law firm in the service of its own economic interests. If Patton Boggs and Chevron wish to end this misbegotten piece of collateral litigation by settlement, they must do so by means that do not contravene bedrock norms of professional ethics. The Court should reconsider its decision to enter the Stipulated Order and require the parties to produce a

---

[1]   *See* Ex. D, Declaration of Craig Smyser in Support of Smyser Kaplan & Veselka LLP's Motion to Withdraw; Declaration of John W. Keker in Support of Keker & Van Nest LLP's Motion to Withdraw; Memorandum of Law in Support of Keker & Van Nest LLP's Motion to Withdraw.

[2]   In retaining Donziger to represent them for the limited purpose of intervening and objecting to approval of the settlement, and seeking to prevent further injury thereby, Mssrs. Camacho and Piaguaje do not in any respect accept the exercise by U.S. courts of personal jurisdiction over them on generally related matters such as Chevron's RICO case.

proposed order that is non-injurious and consistent with the Code of Professional Responsibility if they wish to proceed with dismissal of the action.

I.      **The Proposed Intervenors Are Entitled To Intervene As Of Right Under Federal Rule of Civil Procedure 24(a).**

The Proposed Intervenors easily satisfy the standard requirements for intervention. To intervene as of right, a movant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992). These requirements should be evaluated in light of a "liberal policy in favor of intervention." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). Where these factors are met, it is clearly appropriate for the Court to grant leave to intervene to oppose a stipulated dismissal or consent order entered without proper notice to all interested parties. *See In Re Jones & Laughlin Ret. Plan*, 87 CIV. 0232 (RO), 1987 WL 8648 (S.D.N.Y. Mar. 26, 1987), *aff'd sub nom. Jones & Laughlin Ret. Plan v. LTV Corp.*, 824 F.2d 202 (2d Cir. 1987) (granting leave to intervene where application sought to vacate a consent order "on the ground that the Consent Order was obtained in a procedurally deficient manner").

With respect to timeliness, neither Mssrs. Camacho and Piaguaje nor Mr. Donziger had any notice of the Patton Boggs withdrawal or of the existence of the Agreement or any aspect of its negotiations with Chevron until Chevron's press release and related newspaper reports reached the Proposed Intervenors mid-day on May 7, 2014. *See* Ex. A at ¶ 9. It appears that the Agreement was filed and the Stipulated Order "so-ordered" by this Court the same day without

any notice to the Patton Boggs clients or, as much as a translated copy[3] of the agreement being provided to them. *Id.* at ¶ 10. They still have not been provided with any written or other specific communication regarding the withdrawal. *Id.* Neither the Patton Boggs clients nor Mr. Donziger had any advance notice or information sufficient to anticipate that the Agreement was coming and that it contained provisions so prejudicial to the interests of the Ecuadorians. *Id.* Since May 7, the Ecuadorians—having now lost their primary U.S. counsel that in the past was generally responsible for protecting client interests in the United States including in situations precisely as that faced here —have moved as expeditiously as possible to analyze the Agreement and its potential impacts and prepare and file this motion. The motion is timely filed within the 14-day period for motions to reconsider specified by Local Civil Rule 6.3.

With respect to interest and threatened impairment thereto, the facts are equally straightforward. Movants here seek intervention and reconsideration of the Court's endorsement and entry of the Agreement, which was transparently designed by Chevron as an attack on the reputation of the overall litigation against Chevron in which Proposed Intervenors have an undeniably "direct, substantial, and legally protectable" interest, *Brennan v. NYC Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001), as well as laying the foundation for future injury on that interest by means of the voluntary, unwarranted disclosure of confidential communications and information by Patton Boggs.

With respect to adequacy of protection, it is abundantly clear that neither Patton Boggs nor Chevron will protect Proposed Intervenors' interests in these proceedings. Again, Patton Boggs already has injured and agreed to further injure its own clients through its agreement to

---

[3]   None of the clients of Patton Boggs in Ecuador speak English and it was customary for Patton Boggs during its representation to prepare translations of all key documents in the litigation.

issue a public statement of "regret" and provide disclosure of client information and discovery regarding confidential matters not ordered by any court.[4]   Movants need only show that the existing representation "may be" inadequate, and the showing required is "minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972); *see also Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (potential conflict of interest satisfies the minimal burden of showing inadequate representation).   That showing is obvious here.

Having satisfied the relevant factors, movants are entitled to intervene here for the limited purpose of challenging the Court's "so ordered" entry of the Stipulated Order based on the Agreement, which as set forth below is injurious to movants and so repugnant to public policy and professional ethics that the Court cannot grant tacit approval to it even by so-ordering it to dispose of a civil matter.

## II.   The Court Should Reconsider Its Order and Refuse to Approve Any Stipulated Dismissal Based on Flagrantly Unethical Conduct.

If this Court grants this request to intervene, Proposed Intervenors may supplement this filing with additional briefing addressing the impropriety of the Patton Boggs/Chevron settlement and the reasons why this Court should reconsider its approval of the settlement.   On a motion for reconsideration, a movant must demonstrate the existence of a matter that the Court originally overlooked and that might reasonably be expected to "alter the result." *See* Local Civil Rule 6.3; *Cioce v. County of Westchester*, 128 Fed. Appx. 181, 185 (2d Cir. 2005); *O'Connor v. Pan Am Corp.*, 5 Fed. Appx. 48, 52 (2d Cir. 2001).   Reconsideration should be granted where

---

[4]   While the Agreement purports to afford the Ecuadorians "an opportunity to assert any privilege or work product protection that may attach to any information sought to be discovered," Agreement at ¶ 5(c), this "opportunity" is meaningless without counsel or the resources to retain counsel.

7

necessary to correct for "clear error" or to "prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

With respect, the Court appears to have entirely overlooked and not "considered" at all the substantive issues at stake surrounding the Court's acceptance and entry of the Stipulated Order predicated on the unethical Agreement. The Stipulated Order was "so ordered" apparently within hours if not minutes of its submission. It was never filed on the public docket so that other interested parties might consider its impact on their own interests. The "so ordered" entry at Dkt. 81 contains no discussion or analysis whatsoever to reflect the Court's thinking on the appropriateness of entering such an order and effectively approving the unethical underlying Agreement.

The express authority invoked by the Stipulated Order—Federal Rule of Civil Procedure 41(b)—allows for dismissal of actions "on terms that the court considers proper." Thus, "the existence of a so ordered settlement agreement incorporates the terms of the settlement into a court order." *Thanning v. Nassau Cnty. Med. Examiners Office*, 187 F.R.D. 69, 71 (E.D.N.Y. 1999).[5] Indeed, a settlement agreement incorporated into so-ordered dismissal binds the Court as much as it binds the parties. *See Geller v Branic Intern. Realty Corp.*, 212 F3d 734 (2d Cir. 2000) ("Once the District Court 'so ordered' the settlement agreement . . . it was required to enforce the terms of the agreement, including the obligation imposed on the court"). This implicates the Court's "general responsibility to ensure that its orders are fair and lawful" and provides it with at least "some responsibility over the terms of a settlement agreement."

---

[5] This is certainly the case where the stipulated dismissal expressly relies on and references the underlying settlement agreement and expressly provides for continuing jurisdiction by the court to enforce its terms. *Compare Cross Media Mktg. Corp. v. Budget Mktg., Inc.*, 319 F. Supp. 2d 482, 483 (S.D.N.Y. 2004) (no continuing jurisdiction where "[t]he settlement agreement never was filed or approved").

*Roberson v. Giuliani*, 346 F.3d 75, 80, 82 (2d Cir. 2003) (rejecting lower court reasoning that the court's so-ordered endorsement of a settlement agreement "does not . . . constitute [legally significant] 'judicial sanctioning'"); *Smyth v. Rivero*, 282 F.3d 268, 282 (4th Cir. 2002) ("A court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order with judicial imprimatur").[6]   The reality is that, in filing a settlement agreement pursuant to a stipulated dismissal, the parties "seek[] the Court's tacit approval of its terms." *Black Rock City LLC v Pershing County Bd. of Com'rs*, 2014 WL 40755 (D. Nev. Jan. 6, 2014). Such approval cannot be granted to illegal, unethical, or otherwise unenforceable settlements. *Id.*; *Health-Chem Corp. v. Baker*, 737 F. Supp. 770, 775 (S.D.N.Y. 1990), *aff'd*, 915 F.2d 805 (2d Cir. 1990).

The Agreement on its face violates concrete ethical requirements governing the conduct of the parties and is therefore contrary to law and public policy. The ethical propriety of Patton Boggs's conduct is simultaneously governed by the ethical codes of the firm's home jurisdiction, the District of Columbia, as well as the jurisdictions of New York and New Jersey, where the conduct occurred and where the related litigations proceeded, and is further governed in federal proceedings by the ABA Model Code, *see NCK Org. Ltd. v. Bregman,* 542 F.2d 128, 129 n. 2 (2d Cir. 1976).

While movants are not yet in a position to fully brief the ethical failures of the Agreement on this motion to intervene, the following *prima facie* defects of the Agreement are noted in substantiation of movants' position that the propriety of the Agreement needs further

---

[6]   While private settlements, distinguished from class action settlements and consent decrees, do not always specifically "entail the judicial approval," the case is different when "the terms of the agreement are incorporated into the order of dismissal." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 n.7 (2001).

consideration by this Court beyond the rubber-stamp "so ordered" notation that it provided on

May 7:

- ***Improper withdrawal.*** Patton Boggs's unilateral withdrawal of representation does not appear to be authorized or available under either ABA/NY Rule 1.16(b) or 1.16(c). The agreement's reference to the findings of Judge Kaplan is inapposite as those findings are being vigorously challenged on appeal and are in any event suspect given that they directly contradict the findings of Ecuador's courts (where Chevron wanted the trial held). It appears that the key factual context behind the withdrawal and the Agreement, as confirmed by numerous media reports including several citing internal Patton Boggs sources, involves the firm's self-interest in settling its affairs to achieve a merger with the Squire Sanders law firm. While this might be a legitimate rationale in the context of a routine business deal, it provides no justification for a unilateral decision by a law firm to withdraw in prejudice to its clients, much less to affirmatively injure its clients.

- ***Failure to take steps to avoid prejudice.*** Irrespective of the purported bases for withdrawal, the manner in which the firm withdrew independently violates ABA/NY Rule 1.16(e), which requires a lawyer to "take steps, to the extent reasonably practicable, to avoid foreseeable prejudice to the rights of the client." As an explicit part of the Agreement, Patton Boggs issued a press statement of "regret" designed to boost the oil company's media campaign against us and the affected Ecuadorian communities. The press statement, which cannot be justified as a remedial measure to preserve candor to a tribunal, appears to have been a bargaining chip offered at the negotiating table to secure for Patton Boggs benefits at the expense and prejudice of the affected clients.

- ***Failure to communicate.*** Patton Boggs' failure to inform its clients about the substance and scope of its negotiations with Chevron such that the clients would be able to take steps to protect their interests is a clear violation of the firm's duty to communicate under ABA/NY Rule 1.4.

- ***Failure to maintain confidentiality.*** In paragraph 5 of the agreement, Patton Boggs voluntarily offers additional information to Chevron about its representation of the communities under the rubric of additional "discovery." But this "discovery" has not been ordered by any court and Patton Boggs' offer of this information and any future delivery of such information to Chevron amounts to a clear violation of the firm's confidentiality obligations under ABA/NY Rule 1.6. While the Agreement ostensibly allows the affected clients to assert privilege, this ignores the fact that the voluntary offer of unordered "discovery" in the first place violates the confidentiality obligation irrespective of privilege issues, and that with respect to privilege, the Agreement conspicuously overlooks the fact that the indigent affected clients no longer even have counsel effectively capable to make such privilege assertions after the Patton Boggs' withdrawal.

- ***Improper use of confidential information.*** The offer of "discovery" under paragraph 5—like the statement of "regret," an item offered by Patton Boggs to Chevron as a

bargaining chip—also violates the ethical provision prohibiting the firm from using confidential information in its own self-interest (ABA/NY Rule 1.8) and/or to the disadvantage of its former clients (ABA/NY Rule 1.9).

The Court should not place its imprimatur on an Agreement that contains such ethical violations as those evident here. Indeed, if not reconsidered, the Court could soon find itself required to enforce the unethical terms of the Agreement under its ongoing jurisdiction explicitly provided for in the Stipulated Order. If the parties wish to end this litigation by settlement, they must do so by ethical means that conform to the basic requirements of the legal profession and do not offend public policy and cause injury to third parties, particularly highly vulnerable third parties such as the Ecuadorians.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors hereby respectfully request that this Court (1) grant them leave to intervene in this action; (2) reconsider its acceptance and entry of the Stipulated Order and vacate the order at Dkt. 81; (3) issue an order blocking implementation of the Patton Boggs–Chevron settlement until it can conform to the ethical rules; (4) direct the parties, if they wish to continue their efforts to settle the case, to submit a proposed order of dismissal that rests upon an ethical underlying agreement between them; and (5) only accept such a future proposed order of dismissal after it has been filed by the parties on the public docket such that all potentially interested parties have a reasonable period of time to examine it and ensure their interests are protected.  Proposed Intervenors reserve the right to supplement this filing with additional briefing and support.

Dated: May 21, 2014                              Respectfully submitted,

New York, New York

                                                 s/ Steven R. Donziger

                                                 Steven R. Donziger
                                                 245 W. 104th Street, #7D
                                                 New York, NY 10025
                                                 Tel: (212) 570-4499
                                                 Fax: (212) 409-8628
                                                 Email: StevenRDonziger@gmail.com


                                                 *Attorney for Proposed Intervenors Hugo
                                                 Camacho Naranjo, Javier Piaguaje
                                                 Payaguaje, and Steven R. Donziger*