# EXHIBIT A

## DECLARATION

I, Pablo Fajardo Mendoza, hereby declare as follows:

1. I am the principal lawyer for the plaintiffs who won a judgment against Chevron for environmental damage in the case *Maria Aguinda v. Chevron Corporation.* The plaintiffs include Srs. Hugo Camacho Naranjo and Javier Piagauje Payaguaje, two of the defendants in the *Chevron v. Donziger* "RICO" action currently on appeal in New York.

2. The submission of this affidavit should in no way be construed that I nor any of my clients in Ecuador accept the general jurisdiction of U.S. courts or the jurisdiction of this Court in the RICO action. I submit this affidavit for the limited purpose of supporting a motion to intervene to preserve as best as possible the interests of my clients in the face of a deeply unethical and unsettling course of conduct by their U.S. counsel that I believe not only prejudices them but reflects poorly on the standards of legal representation applicable in the United States. If the Court believes that this request for intervention materially changes in any respect the jurisdictional status of me or my clients with respect to this federal district, I ask that the Court promptly inform me of the same to allow me the opportunity to consider the consequences of this Declaration under the rules of the United States legal system, with which I am not familiar.

3. On behalf of my clients in Ecuador, I retained the Patton Boggs law firm in 2010 to assist with various legal matters in the United States and elsewhere in relation to the Ecuador litigation against Chevron.

4. During the period of the Patton Boggs retention, I and other members of the legal team for the plaintiffs in the *Aguinda* case regularly communicated confidential information and attorney-client communications to various attorneys at the firm as was necessary for them to fulfill the scope of their representation. These communications included several in-person meetings and numerous emails.

5. These confidential communications took place from approximately February 2010 until recently. They were made at various times with the following attorneys at the firm: James Tyrell, Jr.; Eric Westenberger; Edward Yennock; Annie Carrasco; Adlai Small; Eric Daleo; Benjamin Chew; Jason Rockwell; and their associates and paralegal, technology, secretarial, and other support staff.

6. In approximately December 2013, I spoke by telephone to Mr. James Tyrrell, Jr., a Patton Boggs partner and the lead attorney in the firm responsible for the Ecuador litigation. On that call, Mr. Tyrrell explained to me through a translator that the firm

1

would continue its commitment to zealously represent the Ecuadorian plaintiffs in all pending matters, including an appellate matter before the Fourth Circuit Court of Appeals, but had yet to make a decision as to whether it would handle appeal of the *Chevron v. Donziger* matter then pending decision before this Court. Because we believed we were certain to face an adverse judgment in the RICO case (based on this Court's numerous prejudicial comments against us, the denial of the right to a jury, and for other reasons made clear in the various mandamus petitions filed with the Second Circuit and in other motions), we were extremely concerned at that time that the two Ecuadorians who appeared in the RICO trial would not have appellate counsel.

7. In approximately March of this year, after this Court ruled in the *Chevron v. Donziger* case, I talked again with Mr. Tyrrell. He explained to me through a translator that the firm's partnership had ordered him and other lawyers at Patton Boggs to forego working on the appeal of Judge Kaplan's decision and to not to undertake any new work for the Ecuadorians. He said that he personally disagreed with this decision, but that he was obligated to abide by the decision of the firm's partnership. He told me the primary driver of this decision was the contingent liability situation the firm faced at a time that it was in merger talks with another law firm. He stated clearly that Patton Boggs would abide by its ethical duties and remain loyal to the clients at all times.

8. Neither Mr. Tyrrell nor any other lawyer from Patton Boggs ever informed me the firm was negotiating a detailed "settlement agreement" with Chevron. I first learned of the withdrawal of Patton Boggs when its settlement agreement with Chevron was announced publicly on May 7, 2014. Neither I nor any other Ecuadorian plaintiff was informed of this agreement or any of its contents before it was announced to the media, and reported publicly.

9. Until the moment the agreement was announced, Mr. Tyrrell had repeatedly expressed to me his belief that the decision in Chevron's RICO case in New York was deeply flawed both factually and legally and that he thought it stood a great likelihood of being reversed on appeal. Mr. Tyrrell repeatedly stressed he based his view on an independent analysis of the facts and that his law firm fully disagreed with the findings of Judge Kaplan. He never personally expressed "regret" or indeed any misgivings for his involvement, or his firm's involvement, in the representation of the Ecuadorians.

10. To this day, nobody at Patton Boggs has provided me with a copy of the settlement agreement, either in English or a translated version (I do not speak or read English with any degree of proficiency).

2

11. I have had an English version of the settlement agreement procured from the internet and read to me in Spanish by a bilingual staff person in our law office, so I am familiar with its contents.

12. I was never informed by Mr. Tyrrell or any other lawyer at Patton Boggs that the firm would agree as part of its settlement with Chevron to make a public comment that it "regrets" its involvement in the *Aguinda* litigation. I would have objected strenuously had I known the provision was being negotiated. I certainly object to it now and consider it a profound betrayal by the law firm of its Ecuadorian clients and not in the least way reflective of the actual beliefs of Mr. Tyrrell, as he repeatedly expressed to me throughout his firm's representation of us up to and including our last conversation in March after the RICO decision was issued.

13. I was never informed by any lawyer at Patton Boggs that the firm would agree as part of its settlement to voluntarily produce documents and testimony to Chevron. I object strenuously to this provision of the settlement agreement given that any such documents are the property of the Ecuadorian clients. As their legal representative, we do not consent to any discovery being produced to Chevron and we have demanded the firm return to us all client files and their copies, which we consider to be our property and to which we will endeavor to preserve.

14. As a general matter, I did not and do not consent in any respect to the terms of the settlement agreement between Patton Boggs and Chevron. I believe several provisions in the agreement violate professional legal ethics and represent a betrayal of various duties Patton Boggs owes to its clients.

15. My clients are entirely unable to object to any of the discovery provisions under the procedures set up by the agreement because they do not now have U.S. counsel capable of doing so, given that Patton Boggs has withdrawn its representation. As both Patton Boggs and Chevron know, the affected communities currently do not have funds to retain new U.S. counsel. Mr. Julio Gomez, who represented Messrs. Piagjauje and Camacho in the *Chevron v. Donziger* case, has indicated he will do no further work on the matter absent a substantial payment of funds that we currently do not have.

16. I have made some inquiries with persons familiar with the U.S. legal market and have been informed that, after how aggressively Chevron has treated Patton Boggs and others who had been retained to help the affected communities, it is highly unlikely that any U.S. lawyer would be willing to enter this matter even for the limited purpose of asserting privilege.

3

I declare under penalty of perjury under the laws of Ecuador and the United States of America that the foregoing is true and correct.

Executed on May 20th, 2014

Quito, ECUADOR                                   Pablo Fajardo Mendoza

# DECLARACIÓN

Yo, Pablo Fajardo Mendoza, por medio de la presente declare lo siguiente:

1. Yo soy el Procurador Común (Abogado Principal) de los demandantes que vencieron en juicio a Chevron por daños ambientales, en el proceso conocido como *Maria Aguinda v. Chevron Corporation*. Dentro del grupo de demandantes están los señores Hugo Camacho Naranjo y Javier Piaguaje Payaguaje, dos de los demandados en el proceso "RICO" conocido como *Chevron v. Donziger*, el cual actualmente se encuentra en su fase de apelación.

2. La presentación del presente *affidavit* no podrá ser interpretada, bajo ninguna circunstancia, como sometimiento de mi persona o de mis clientes a la jurisdicción general de las cortes de los Estados Unidos de América, o a la jurisdicción de esta Corte en el proceso RICO. Presento este *affidavit* con el objetivo exclusivo de sustentar una moción para intervenir que preserve de la mejor manera los intereses de mis clientes, frente a la conducta preocupante y profundamente anti-ética de sus abogados estadounidenses, la cual en mi opinión no solamente es perjudicial para ellos, sino que constituye una triste representación de los estándares aplicables a los abogados de los Estados Unidos. Si esta Corte estima que moción para intervenir modifica de manera material el estatus de jurisdicción de mi persona o mis clientes con respecto de este distrito federal, le solicito a la Corte que me informe de este particular inmediatamente para poder tener la oportunidad de considerar las consecuencias de esta Declaración bajo las reglas del sistema legal de los Estados Unidos, con el cual no estoy familiarizado.

3. En nombre y representación de mis clientes en el Ecuador, contraté al estudio jurídico Patton Boggs en el 2010 para que presten sus servicios con varios asuntos legales en los Estados Unidos y otros países en relación con la litigación ecuatoriana en contra de Chevron.

4. Durante el período de prestación de servicios de Patton Boggs, yo y otros miembros del equipo legal de los demandantes en el caso *Aguinda* regularmente comunicamos información confidencial y propia de la relación abogado-cliente a varios abogados de la firma a medida que esto era necesario para la consecución de los fines de su representación. Estas comunicaciones fueron tanto personales, como a través de numerosos correos electrónicos.

5. Estas comunicaciones confidenciales tuvieron lugar aproximadamente desde febrero del 2010 hasta recientemente. Ocurrieron en diversos momentos con los siguientes abogados de la firma: James Tyrell, Jr.; Eric Westenberger; Edward Yennock; Annie

1

Carrasco; Adlai Small; Eric Daleo; Benjamin Chew; Jason Rockwell; y sus diversos asociados, paralegales, y equipo secretarial y de soporte.

6. Aproximadamente en diciembre del 2013, mantuve una conversación telefónica con el señor James Tyrrell, Jr., socio de Patton Boggs y el abogado principal de la firma y responsable con respecto a la litigación ecuatoriana. En dicha llamada telefónica, el Sr. Tyrrell me explicó a través de un traductor que la firma continuaría con su compromiso a representar celosamente a los demandantes ecuatorianos en todos los asuntos pendientes, incluyendo un proceso de apelación ante el Cuarto Circuito de Apelación, sin embargo aún no había decidido si la firma representaría a los demandantes ecuatorianos en la apelación del proceso *Chevron v. Donziger* pendiente ante esta Corte. Dado que nosotros pensamos que con seguridad obtendríamos una sentencia adversa en el caso RICO (debido a los numerosos comentarios perjudiciales que esta Corte lanzó en nuestra contra, la negación de nuestro derecho a tener un jurado, y por otras razones que se han explicado con claridad tanto en las varias peticiones de *mandamus* presentadas ante el Segundo Circuito como en otras mociones) en ese momento nos preocupó sobremanera que los dos ecuatorianos que comparecieron en el juicio RICO no tendrían abogados para la apelación.

7. Aproximadamente en marzo de este año, luego de que esta Corte dictara sentencia en el caso *Chevron v. Donziger*, conversé nuevamente con el Sr. Tyrrell. Me explicó a través de un traductor que los socios de su estudio jurídico le habían ordenado a él y a otros abogados de Patton Boggs que no asuman trabajo alguno en la apelación de la decisión del Juez Kaplan, y que no trabajen más para los ecuatorianos. Dijo que personalmente él no estaba de acuerdo con dicha decisión de los socios del estudio jurídico, pero que estaba obligado a acatarla. Me dijo además que el principal motivo detrás de dicha decisión era la situación de responsabilidad contingente que el estudio jurídico enfrentaba en ese momento, y que ésta estaba en negociaciones de fusión con otro estudio jurídico. Señaló con claridad que Patton Boggs honraría sus obligaciones éticas, y permanecería leal a los clientes en todo momento.

8. Ni el Sr. Tyrrell ni otro abogado de Patton Boggs me informó jamás que el estudio jurídico estaba negociando un acuerdo transaccional ("*Settlement Agreement*") con Chevron. Yo me enteré de la retirada de Patton Boggs recién cuando su acuerdo transaccional con Chevron fue hecho público el 7 de mayo del 2014. Ni yo, ni ningún demandante ecuatoriano, fuimos informados sobre este acuerdo ni su contenido antes de que éste sea anunciado a los medios de comunicación, y reportado públicamente.

9. Hasta el momento en que el acuerdo transaccional fue anunciado, el Sr. Tyrrell repetidamente compartió conmigo su convicción que la sentencia en el caso RICO de Chevron en Nueva York adolecía de profundos errores tanto facticos como legales, y

2



él afirmó que dicha sentencia tenía una gran probabilidad de ser revocada en apelación. El Sr. Tyrrell recalcó repetidamente que sustentaba su parecer en un análisis independiente de los hechos, y que su estudio jurídico estaba en completo desacuerdo con las conclusiones del Juez Kaplan. En ningún momento expresó "arrepentimiento" o ningún sentimiento negativo sobre su rol, y el rol de su firma, en la representación de los ecuatorianos.

10. Hasta este día, nadie de Patton Boggs me ha facilitado una copia del acuerdo transaccional, ni en su inglés original, ni en español (no leo ni hablo inglés con facilidad).

11. He instruido que la versión en inglés del acuerdo transaccional sea obtenido del internet, y me ha sido leía en español para un miembro bilingüe de mi estudio jurídico, así que estoy familiarizado con su contenido.

12. Jamás se me informó por medio del Sr. Tyrrell u otro abogado de Patton Boggs que la firma aceptaría, como parte de su acuerdo con Chevron, el hacer un comentario público en el sentido de que "se arrepiente" de su participación en el caso *Aguinda*. De haber sabido que dicha provisión estaba siendo negociada, yo me hubiera opuesto vehementemente a la misma. Me opongo a la misma hasta este momento, y la considero una profunda traición por parte del estudio jurídico en contra de sus clientes ecuatorianos. Dicha provisión no refleja en lo más mínimo los pareceres y conclusiones reales del Sr. Tyrrell, tal y como me fueron comunicados éstos repetidamente a lo largo de la representación de la firma, incluyendo nuestra última conversación de marzo, después de que la sentencia RICO había sido dictada.

13. Jamás fui informado por ningún abogado de Patton Boggs que la firma acordaría, como parte de su acuerdo transnacional, el entregar voluntariamente documentos y testimonios a Chevron. Me opongo vehementemente a esta provisión del acuerdo transaccional, dado que todos y cada uno de esos documentos son de propiedad de los clientes ecuatorianos. Como su Procurador Común, no acepto que ningún tipo de *discovery* le sea entregado a Chevron, y hemos exigido que el estudio jurídico nos entregue todos los archivos de los clientes con sus copias, los cuales estimamos son de nuestra propiedad, y buscaremos preservar.

14. Como un asunto general, jamás he consentido ni jamás consentiré con ningún respecto los términos y provisiones del acuerdo transaccional entre Patton Boggs y Chevron. Es mi parecer que varias provisiones y cláusulas del acuerdo son violatorias de la ética profesional legal, y constituyen una traición a varias obligaciones de Patton Boggs para con sus clientes.

3

15. Mis clientes se encuentran en total incapacidad de objetar a las estipulaciones de *discovery* dentro de los procedimientos establecidos por el acuerdo transaccional, puesto que ahora no cuentan con abogados estadounidenses capaces de hacer esto, ya que Patton Boggs ha renunciado a su representación. Como tanto Patton Boggs como Chevron saben, las comunidades afectadas no tienen fondos para contratar nuevos abogados en EEUU. El Sr. Julio Gomez, quien representó a los señores Camacho y Piaguaje en el caso *Chevron v. Donziger*, ha indicado que no va a realizar más trabajo en el caso sin que se le entregue un pago sustancial que se le debe, lo cual ahora es imposible por falta de fondos.

16. He realizado algunas consultas con personas familiares al sistema legal de los Estados Unidos, y me han informado que, luego de la agresividad con la que Chevron ha tratado a Patton Boggs y otros que han sido contratados a lo largo del tiempo para ayudar a las comunidades afectadas, es muy poco probable que cualquier abogado estadounidense esté dispuesto a ingresar a este caso, aunque sea por el limitado propósito de alegar privilegio.

Declaro bajo pena de perjurio bajo las leyes del Ecuador y de los Estados Unidos de América que lo anterior es verdadero y correcto.

Dado el 20 de mayo

Quito, ECUADOR

Pablo Fajardo Mendoza

4