UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PATTON BOGGS LLP,

                Plaintiff,


         -against-                              12-cv-9176 (LAK)


CHEVRON CORPORATION,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


        Appearances:

                Elkan Abramowitz
                Edward M. Spiro
                MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

                James K. Leader
                Caroline C. Marino
                LEADER & BERKON P.C.

                *Attorneys for Plaintiff*


                Randy M. Mastro
                Anne E. Neuman
                William E. Thomson
                Anne M. Champion
                GIBSON, DUNN & CRUTCHER LLP

                Herbert J. Stern
                Joel M. Silverstein
                Mark W. Rufalo
                STEIN & KILCULLEN, LLC

                *Attorneys for Defendant*

Steven R. Donziger
*Attorney for Movants and Proposed Intervenors*

LEWIS A. KAPLAN, *District Judge.*

This case is an outgrowth of the decades long litigation between residents of Ecuador's Amazon rain forest (the "Lago Agrio Plaintiffs" or "LAPs"), and first Texaco and then Chevron Corporation ("Chevron"). Steven Donziger, a New York lawyer who purports to represent the LAPs, and his allies obtained a multibillion dollar judgment from the Ecuadorian courts (the "Lago Judgment"). Chevron sued Donziger, his clients, and others in this Court where they claimed, among other things, that the Lago Judgment was obtained by fraud (the "NY Case"). On March 4, 2014, this Court, after a lengthy trial, found that the Lago Judgment was the product of fraud and part of an extortionate scheme, all directed by Donziger. It found that Donziger:

> "and the Ecuadorian lawyers he led corrupted the Lago Agrio case. They submitted fraudulent evidence. They coerced one judge, first to use a court-appointed, supposedly impartial, 'global expert' to make an overall damages assessment and, then, to appoint to that important role a man whom Donziger hand-picked and paid to 'totally play ball' with the LAPs. They then paid a Colorado consulting firm secretly to write all or most of the global expert's report, falsely presented the report as the work of the court-appointed and supposedly impartial expert, and told half-truths or worse to U.S. courts in attempts to prevent exposure of that and other wrongdoing. Ultimately, the LAP team wrote the Lago Agrio court's Judgment themselves and promised $500,000 to the Ecuadorian judge to rule in their favor and sign their judgment."[1]

The Court imposed a constructive trust on any proceeds of the Lago Judgment that have reached or might reach Donziger and the two LAPs who defended the case (the "LAP Representatives")[2] and

---

[1]   *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 384 (S.D.N.Y. 2014).

[2]   The other LAPs, as well as other defendants named in the complaint in the NY Case, defaulted.

granted other relief.  The Court of Appeals affirmed in all respects.[3]

Prior to the rendition of the Lago Judgment, Donziger had enlisted the firm of Patton Boggs LLP ("Patton"), which since has merged with or been acquired by another firm, to work on behalf of the LAPs.  Beginning in early 2010, Patton developed a strategy for enforcement of the judgment that Donziger and his allies expected to obtain in Ecuador, wrote at least some court papers that were submitted in Ecuador, played an important role in resisting U.S. discovery sought by Chevron in aid of the Ecuadorian and other litigation, represented the two LAP Representatives in the Second Circuit in appeals and other proceedings relating to the NY Case, and even wrote court papers in the NY Case that were submitted over the names of other attorneys.[4]  Its role was such that Chevron named Patton in the NY Case as a non-party co-conspirator in the alleged fraud.

Patton, the full role of which is not yet known, did not confine itself to acting as counsel for the LAPs.  It brought three lawsuits against Chevron *on its own behalf*.  This was the last of the three.   In due course, Patton's claims against Chevron were dismissed, Chevron filed counterclaims against Patton, and Patton's motion to dismiss Chevron's counterclaims was denied.

Following the ruling against Donziger and the LAP Representatives in the NY Case, Patton and Chevron entered into a settlement and release agreement, dated May 7, 2014 (the "Settlement Agreement"), pursuant to which Patton, among other things, agreed to pay Chevron $15 million, expressed regret for its actions in light of the findings made in the NY Case, and agreed to

---

[3]

    *Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016).

[4]

    No Patton lawyer ever appeared in the district court in *Chevron Corp. v. Donziger.*

4

provide Chevron certain discovery, subject to all applicable Rules of Professional Conduct.[5] Simultaneously with the execution of the Settlement Agreement, Patton and Chevron entered into a Stipulation of Dismissal (the "Rule 41 Stipulation"), which dismissed the action.  One term of the Rule 41 Stipulation provided that the Court would retain jurisdiction for the purposes of enforcing the Settlement Agreement and deciding disputes over compliance.  The Rule 41 Stipulation for that reason alone required court approval.[6]  The Court (Preska, C.J.) "so ordered" the Rule 41 Stipulation and closed the case.  The Court neither was asked to approve, nor approved, the Settlement Agreement.  By signing the Rule 41 Dismissal, it simply agreed to the retention of jurisdiction for the stated purposes.

Donziger and the LAP Representatives are not and never were parties to this action. They move to intervene and for reconsideration of the Court's "so ordering" of the Rule 41 Stipulation which, they claim, contemplated or approved alleged breaches of professional responsibilities owed by Patton to them.

---

[5]

DI 81, Ex. A ¶ 5(c).

[6]

The Rule 41 Stipulation recited that the action "is dismissed pursuant to Rule 41(a)(2)." Given that all parties stipulated to voluntarily dismiss the action, however, they could have proceeded under Rule 41(a)(1)(ii) while still providing for the Court's retention of jurisdiction.  *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (providing that action may be dismissed by stipulation of all parties who have appeared); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994) (noting that when dismissal is pursuant to Rule 41(a)(2), court's retention of jurisdiction over settlement agreement may be one of terms set forth in order, and noting that same result could be achieved under Rule 41(a)(1)(ii) "if the parties agree"); *cf. Steiner v. Atochem, S.A.*, No. 89 Civ. 7990, 2002 WL 1870322, at *4 (S.D.N.Y. Aug. 13, 2002), *aff'd*, 70 F. App'x 599 (2d Cir. 2003) (construing voluntary dismissal as pursuant to Rule 41(a)(1) despite reference in dismissal notice to Rule 41(a)(2), because plaintiff could have dismissed under Rule 41(a)(1) in first instance).

*Facts*

Most of the important facts concerning the long running disputes between Chevron, on the one hand, and Donziger and his clients, on the other, are fully set forth in this Court's March 4, 2014 and earlier opinions, as well as the Court of Appeals' decision affirming the March 4, 2014 opinion, familiarity with which is assumed.  For present purposes, it suffices to describe the Patton–Chevron litigation, the effective termination of Patton's relationship with the LAPs generally and the LAP Representatives in particular, and the settlement of the Patton–Chevron case.  We refer to earlier background only to the extent it is relevant to the discussion.

*The Patton–Chevron Litigation*

*The District of Columbia Actions*

Patton first became involved in this controversy as a litigant rather than merely as counsel in 2010, when it sued Chevron in the District of Columbia.  It there sought a declaration that its representation of parties adverse to Chevron in litigation relating to the Ecuador dispute did not violate standards of professional conduct despite the fact that Patton owned the Breaux Lott Group, a lobbying firm that had acted for Chevron in relation to the same dispute.  Patton then moved to amend its complaint to add additional claims of tortious interference with a contract, tortious interference with an attorney-client relationship, and civil conspiracy against both Chevron and its outside counsel, Gibson Dunn & Crutcher ("Gibson").  In due course, Judge Henry H. Kennedy denied Patton's motion for leave to amend on the ground that the proposed amended complaint

6

failed to state any legally sufficient claim and granted Chevron's motion to dismiss the complaint.[7]

Undaunted, Patton filed a second action against Chevron and Gibson, again on its own behalf rather than on behalf of its clients. Its complaint "present[ed] claims identical to those that Patton Boggs sought to add in the first action."[8] Not surprisingly, Judge Kennedy promptly granted the defendants' motion to dismiss, largely on former adjudication grounds.[9]

*The Present Action*

Following the district court's dismissal of its two District of Columbia actions, Patton commenced this third lawsuit, again on its own behalf, against Chevron, this one in the District of New Jersey. Its complaint contained three claims for relief. The first sought recovery for Patton itself on a preliminary injunction bond that had been filed in an action in the NY Case—an action to which Patton never was a party and in which it never even appeared as counsel in the district court.[10] It sought also to recover attorney's fees for its appellate services in the NY Case and damages for alleged malicious prosecution. In due course, it was transferred from New Jersey to this Court.

---

[7]

*Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012).

[8]

*Patton Boggs, LLP v. Chevron Corp.*, 825 F. Supp. 2d 35 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012).

[9]

*Id.*

[10]

The purpose of the bond was to provide a fund to pay any damages suffered by Donziger and the LAP Representatives, who were the enjoined parties, if the preliminary injunction were reversed, as in fact had occurred. Of course, any claim on the bond readily could have been made in this Court, where the bond was filed. But Patton chose to pursue recovery in New Jersey.

Chevron then moved to dismiss the complaint and for leave to assert counterclaims against Patton.  Both motions were granted.[11]  Chevron's counterclaim accused Patton of complicity in the scheme to obtain the Lago Judgment by corrupt means, with obstructing discovery of the fraud, and with falsely asserting the legitimacy of that Judgment.  It sought compensatory and punitive damages for alleged fraud, for alleged deceit under N.Y. Judiciary Law § 487, and for malicious prosecution.

Thus, by the time the dust had settled with respect to Patton's three lawsuits against Chevron, all of Patton's claims against Chevron and Gibson had been dismissed but Patton was facing a claim for quite substantial damages for alleged fraud, deceit, and malicious prosecution.  That claim was grounded largely in the contention that Patton was a culpable participant in the fraudulent procurement of the Lago Judgment and related misconduct.  It was that claim that Patton ultimately settled.

*The Effective Termination of the Relationship Between Patton and the LAPs*

In the meantime, the professional relationship between Patton and the LAPs had ended, for all practical purposes, long before the May 7, 2014 settlement between Patton and Chevron.

As noted, the Patton–LAP relationship began in early 2010 and comprehended the

---

[11]     In granting the motion for leave to assert counterclaims, the Court rejected Patton's contention that amendment would be futile because the counterclaims were insufficient to withstand a motion to dismiss.  DI 72.

Lago Agrio litigation, the Section 1782 discovery matters,[12] appellate proceedings in the NY Case, and a covert role—*i.e.*, a role without any overt appearance—in the district court in the NY Case, perhaps among other activities.  Thus, there is no reason to suppose that there ever was any contemplation that Patton would try the NY Case on behalf of the LAP Representatives, who had other counsel in this Court throughout that matter.

By November 2013, Patton was nearing the completion of those tasks it had agreed to undertake on behalf of the LAPs.  On or about November 7, 2013, Patton's James Tyrrell spoke with Pablo Fajardo, the LAPs' lead Ecuadorian counsel and the holder of their powers of attorney, and another of the LAPs' representatives.  Tyrrell informed them that the firm would complete the remaining tasks it had agreed to perform, but would not undertake any new assignments.  He further advised them that Patton would not handle any appeal from an adverse judgment in the NY Case, then on trial, although they might discuss that issue further.[13]

On March 14, 2014, following the trial court decision in the NY Case, Tyrrell again spoke to  representatives of the LAPs, including Fajardo.  He advised them that he would argue an appeal on their behalf in the Fourth Circuit in another matter, but that that argument would be the last work Patton would do on the LAPs' behalf.[14]  He confirmed that Patton would not handle any appeal by the LAP Representatives from the judgment in the NY Case.  Fajardo thanked Tyrrell for services previously rendered and confirmed that Patton would not handle the appeal in the NY

---

[12]  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (describing purpose and operation of Section 1782).

[13]  Tyrrell Decl. [DI 86] ¶ 2.

[14]  That appeal was argued on March 18, 2014.  *In re Naranjo*, 768 F.3d 332 (4th Cir. 2014).

Case.[15]


*The Settlement*

>    *The Settlement Agreement*

>    Patton and Chevron settled their lawsuit pursuant to the Settlement Agreement of

May 7, 2014.[16]   The Settlement Agreement provided in relevant part that:

>    1.    Patton assigned to Chevron all of its "right, claim, title and interest in or to
>    any payment" to which Patton was entitled or in the future may become
>    entitled pursuant to its agreements.  Among other things, it assigned its right
>    to any unpaid legal fees, whether already due or contingent, to Chevron.

>    2.    In reliance on the factual findings of fraudulent and illegal conduct made in
>    the NY Case, Patton and its personnel and affiliates would not assist anyone,
>    including the LAPs, in any effort to enforce the Lago Judgment.

>    3.    Patton would pay Chevron $15 million within thirty days.

>    4.    Patton and Chevron executed the Rule 41 Stipulation, which provided that
>    the Court would retain jurisdiction "for purposes of enforcing the Settlement
>    Agreement and . . . deciding any claim of breach of the Settlement
>    Agreement" and agreed to request that the Court "so order" it.

>    5.    Then-Patton partners James Tyrrell and Eric Westenberger each would
>    submit to a deposition by Gibson under the supervision of a special master
>    appointed by the Court.  In addition, Patton would respond to Chevron
>    document requests "of which the subject matter will be litigation and
>    enforcement funding, the identification of legal representatives associated
>    with litigation and enforcement, international enforcement efforts, and
>    documents previously produced by Patton in redacted form . . . ."  These
>    obligations, however, were "subject to all applicable Rules of Professional
>    Conduct" and, in addition, to the further requirements that (a) Patton "inform
>    the LAPs of the Depositions and the document requests," and (b) the LAPs
>    "be afforded an opportunity to assert any privilege or work product

---

[15]

>    DI 86 ¶ 3; Fajardo Decl. [DI 82-1] ¶ 7.

[16]

>    DI 81, Ex. A.

protection that may attach to any information sought to be discovered, subject to Chevron's right to seek a determination from this Court that any privilege or work product protection is inapplicable for any reason."

6.    Mutual releases would be exchanged.

7.    Upon execution of the Settlement Agreement, Patton would issue a public statement as follows:

> "Today's resolution of our firm's disputes with Chevron ends our involvement in the Lago Agrio matter.  The recent opinion of the United States District Court for the Southern District of New York in the *Chevron v. Donziger* case includes a number of factual findings about matters which would have materially affected our firm's decision to become involved and stay involved as counsel here. Based on the Court's findings, Patton Boggs regrets its involvement in this matter."

That statement was issued on May 7, 2014, apparently at or before noon.[17]

*The Rule 41 Stipulation*

The operative terms of the Rule 41 Stipulation were two:

> "1.    This action is dismissed pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, with prejudice and without costs to any party;

> "2.    This Court shall retain jurisdiction over the parties to this stipulation for purposes of enforcing the Settlement Agreement and for purposes of deciding any

---

[17]

The record does not reveal the exact hour on May 7, 2014 when the statement was issued. We note, however, that one website quoted part of the statement in a post at 12:04 p.m. and reported that Patton had sent it to the author.  David Lat, *Patton Boggs Raises the White Flag in the Chevron Battle, available at* http://abovethelaw.com/2014/05/patton-boggs-raises-the-white-flag-in-the-chevron-battl e-agreeing-to-an-eight-figure-settlement/ (last visited Nov. 29, 2016).  Donziger, through his public relations agent, Karen Hinton, posted a press release attacking the settlement at 1:07 p.m. *Rainforest Villagers Exploring Legal Action to Nullify Settlement Between Patton Boggs and Chevron, available at* http://www.csrwire.com/press_releases/37040-Rainforest-Villagers-Exploring-Legal-Ac tion-to-Nullify-Settlement-Between-Patton-Boggs-and-Chevron (last visited Nov. 29, 2016).

claim of breach of the Settlement Agreement."

The Rule 41 Stipulation was signed by counsel for both parties and "so ordered" by a judge, who added that "The Clerk of the Court Shall mark this action closed and all pending motions denied as moot."[18]  It was filed at 5:32 p.m., hours after the Patton statement contemplated by the Settlement Agreement had been quoted in the media and in a Donziger press release.

*The Motion*

Donziger and the two LAP Representatives move to intervene as of right[19] and, assuming such intervention, for reconsideration of the Court's "so ordering" of the Rule 41 Stipulation.  They argue that Patton's agreement to certain of the terms of the Settlement Agreement—Patton's alleged improper withdrawal, its statement of regret concerning its involvement, its alleged "failure to inform its clients about the substance and scope of its negotiations with Chevron," and its agreement to provide discovery subject to the LAPs' right to assert any claims of privilege and work product protection—was "flagrantly unethical"[20] and that the "so ordering" of the Rule 41 Stipulation tacitly endorsed those alleged ethical breaches.  While they are not explicit, they appear to seek to have the Court require Patton and Chevron either to continue the lawsuit between them or to renegotiate their arrangement to eliminate these alleged

---

[18]

DI 81.

[19]

They do not seek permissive intervention.  *See* DI 82, at 5-7.  In any case, a putative permissive intervenor must plead and prove the existence of an independent basis of subject matter jurisdiction over the claim in intervention. Movants have not pleaded the existence of any independent basis of subject matter jurisdiction.

[20]

DI 82, at 10-11.

12

breaches.[21]

*Discussion*

A.     *Intervention*

    1.     *Movants Have No Right to Intervene Because They Do Not Satisfy Rule 24(a)*

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil

Procedure.  It is appropriate only when all of the following requirements are met:

> "(1) the motion is timely; (2) the applicant asserts an interest relating to the property
> or transaction that is the subject of the action; (3) the applicant is so situated that
> without intervention, disposition of the action may, as a practical matter, impair or
> impede the applicant's ability to protect its interest; and (4) the applicant's interest
> is not adequately represented by the other parties."[22]

No one disputes seriously the timeliness of the motion to intervene nor that the

interests of both of the parties to this action diverge from those of the movants.  There are, however,

additional questions: whether any of the movants claims an interest in the transaction or transactions

that are the subject or subjects *of the action* and, even if any does, whether disposition of the action,

as a practical matter, may impair his or her ability to protect his or her interest, and whether any

possible impairment is too remote or contingent to warrant intervention.  Moreover, in view of the

---

[21]

    *See id.*

[22]

    *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (citing
*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

    In addition, Rule 24(c) requires that "[a] motion to intervene . . . be accompanied by a
pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ.
P. 24(c).  Movants ignored that requirement.  Nevertheless, as they have made their position
quite clear in extensive briefing, the Court will take those papers as the substantial equivalent
of the missing pleading.

prior dismissal of this action, whether there is anything in which to intervene.

(a)     *Movants Have No Legally Protected Interest in the Transactions that Are the Subject Matter of the Action*

As this Court wrote in ruling on another Donziger motion to intervene in a previous

action:

> "The word 'interest,' like so many others, means many things, depending upon the context.  So, for example, one may have an abiding 'interest' in the New York Mets in the sense of having a desire to know all about them or hoping that they win baseball games.  One may have an 'interest' also in the sense of owning equity in them.  And there are other possibilities.  The important point, for present purposes, however, is that the word 'interest' as it is used in Rule 24(a) has been construed very narrowly.  In order to intervene as of right, the putative intervenor, in addition to satisfying the other requirements, must advance a concern that is 'direct, substantial, and legally protectable.'  Put another way, '[a] Rule 24 interest must be significantly protectable and direct as opposed to remote or contingent.'"[23]

Movants here seek to intervene on the theory that certain terms of the Settlement

Agreement breached Patton's professional obligations to its clients or former clients, the LAP

Representatives.  But there are several problems with this argument.

Donziger and the LAP Representatives may have an interest, in the sense of caring

about, the transactions that were the subject or subjects of the action between Patton and

Chevron—Patton's claims against Chevron on the injunction bond and for malicious prosecution,

---

[23]     *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 2150450, at *2 (S.D.N.Y. May 31, 2011) (footnotes omitted) (citing 6 Moore's Federal Practice § 24.03(2)(a) (3d ed. 2010) (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)); *Angelo Holding Corp. v. United States*, 321 F. App'x 28, 30 (2d Cir. 2009); *Person v. N.Y. State Bd. of Elections*, 467 F.3d 141, 144 (2d Cir. 2006); *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001)), *appeal dismissed and mandamus denied*, DI 95, No. 11-2260 (2d Cir. filed July 1, 2011), *reconsideration denied*, DI 109, No. 11-2260 (2d Cir. filed Aug. 11, 2011).

and Chevron's claims against Patton for alleged complicity in the corrupt scheme to extort Chevron by, among other things, obtaining and enforcing a corrupt judgment in Ecuador, for fraud, and for other alleged misbehavior by Patton.  But none of them advances a concern *with Patton's claims against Chevron or Chevron's claims against Patton* "that is 'direct, substantial, and legally protectable.'"[24] Their concern is with the *terms* on which the parties agreed to settle this action, which is quite different from an interest or concern with the *subject* of the action that has been settled.[25]   Accordingly, none of them has a right to intervene in this case between Patton and Chevron.

### (b)   Movants Would Have No Right to Intervene In Any Event

Movants would have no right to intervene even if Rule 24(a) embraced a claim that the terms of a settlement breached legal obligations owed by one of the settling parties to a putative intervenor as distinct from an interest in the subject of the action between or among the settling parties.

### (1)   Donziger Asserts No Legally Protected Interest At All

We begin with Donziger.  There is no suggestion that Donziger ever was a client of

---

[24]   The distinction between the subject matter of the litigation and the terms of an agreement to settle that litigation is well established.  *See, e.g.*, *Kokkenon*, 511 U.S. at 378-82.  It is sufficiently important that a district court lacks ancillary jurisdiction over a claim of breach of an agreement settling a federal lawsuit absent an order at the time of the dismissal of the underlying suit that retains jurisdiction over disputes with respect to the enforcement of the settlement agreement.  *Id.*

[25]   *See Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 948 (7th Cir. 2000).

15

Patton.  Accordingly, even assuming for the purpose of discussion that Patton's actions in settling with Chevron breached professional obligations to Patton's clients, Donziger himself—who does not claim an attorney-client relationship with Patton—would have no legally protectable interest or concern.  Donziger therefore would have no right to intervene even if a claim of breach of a duty to the LAP Representatives by virtue of the settlement terms to which Patton agreed came within Rule 24(a).

> *(2)   The LAP Representatives' Concerns With Patton's Actions Either Are Moot or Too Remote and Contingent to Permit Intervention*

The LAP Representatives are in a different position because they claim they were Patton clients and thus beneficiaries of obligations owed by lawyers to their clients.  If Patton breached those obligations by settling with Chevron on the terms to which it agreed, and if Rule 24(a) were construed to include the LAP Representatives concerns with Patton's actions within the term "an interest relating to the property or transaction that is the subject of the action," the LAP Representatives would have surmounted this hurdle.  But even on those assumptions, which we do not adopt, there would remain the question whether the LAP Representatives are so situated that their ability to protect any such interest would be impaired, as a practical matter, absent intervention as Rule 24(a) requires.[26]

The LAP Representatives here contend that Patton's agreement to certain of the terms of the Settlement Agreement was improper.  As they put it:

> "Patton Boggs has . . . switched sides in the middle of a hotly contested legal dispute, unceremoniously abandoned the clients without so much as notifying them,

---

[26]   *See* Fed. R. Civ. P. 24(a)(2).

> and publicly expressed regret at having taken on their representation in the first place.  And it has even agreed to cooperate with Chevron in discovery, so that Chevron may use what it finds against the firm's former clients."[27]

The relief they seek is reconsideration of the Court's approval of the Rule 41 Stipulation.  In the circumstances, it is impossible to see how the "interest" they espouse, assuming it to be an "interest" for Rule 24(a) purposes, is "significantly protectable and direct as opposed to remote or contingent."[28]

For starters, Patton's statement expressing regret at having taken on their representation of the LAP Representatives and its alleged failure to notify the LAP Representatives of what it intended to do were historical facts well before the motion to intervene was filed.  Indeed, they were historical facts when the Rule 41 Stipulation was filed.[29]  Even if the expression of regret and the lack of notice were improper, that bell cannot now be "unrung."  Movants' intervention, and reconsideration of the order approving the Rule 41 Stipulation, would not "significantly protect" the LAP Representatives from those alleged breaches of duty.

Patton's agreement to submit to certain discovery is different to the extent that that obligation is prospective.  But the difference is superficial at best.  The Settlement Agreement provided, as noted above, that Patton's discovery obligations were subject to the requirements that

---

27

    DI 82, at 1-2.

28

    *United States v. State of New York*, 820 F.2d 554, 558 (2d Cir. 1987) (citing *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)); *see also Washington Elec. Co-op.*, 922 F.2d at 96-97 ("[The] putative intervenor [must] have an interest in the proceeding, [that is] direct, substantial, and legally protectable.  An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." (citations omitted)); *Peoples Benefit*, 271 F.3d at 415.

29

    *See supra* note 17.

(a) Patton inform the LAPs of the depositions and document requests, and (b) the LAPs "be afforded an opportunity to assert any privilege or work product protection that may attach to any information sought to be discovered, subject to Chevron's right to seek a determination from this Court that any privilege or work product protection is inapplicable for any reason."[30]

We assume *arguendo* that the LAP Representatives have an interest in preventing any breach of any privilege or work product protection to which they are entitled.  But the Settlement Agreement recognized and protected that interest by (1) subjecting Patton's obligation to cooperate in discovery to "all applicable Rules of Professional Conduct" and, in addition, (2) obligating Patton to give the LAP Representatives (a) notice of any discovery requests made of it as well (b) an opportunity to assert their positions and have them determined before Patton gave any discovery as to which the LAP Representatives asserted protection.  Thus, the interest in protecting against disclosure of protected information, even if it qualified as "an interest relating to the property or transaction that is the subject of the action," which in our view it does not, would not give rise to a right to intervene here.   Given the terms of the Settlement Agreement, the LAP Representatives are not "so situated [with respect to claims of privilege or work product protection] that disposing of the action may as a practical matter impair or impede [their] ability to protect [their ]interest," as Rule 24(a)(2) requires.  In any case, any impairment, and we see none,[31] would be "remote or contingent" and therefore give rise to no right to intervene.

---

[30]

DI 81, Ex. A ¶ 5(c).

[31]

It is theoretically possible that Patton would disclose arguably protected information without giving notice to the LAPs as the Settlement Agreement requires.  Movants, however, do not claim that this has occurred or is likely to occur.

(3)     *The Relief Movants Seek, Even If Granted, Would Not Vindicate or Protect Any "Interests" They Advance*

Finally, apart from what has been said thus far, the claim of a right to intervene fails for another reason.  All that movants seek is reconsideration of the order approving the Rule 41 Stipulation.  But that could accomplish nothing of any practical significance.

This action between Patton and Chevron was a private, bilateral litigation in which neither party acted on behalf of any absent persons.[32]  Unlike the situation in a class or derivative action, the Court's approval never was required for any terms on which Patton and Chevron might settle.  Patton and Chevron were free to settle it on any mutually acceptable terms.[33]  They had no obligation even to disclose the terms of any settlement.  Moreover, they had an unqualified right to dismiss the action by stipulation without court approval.[34]  Court approval was required for the Rule 41 Stipulation for one reason alone—paragraph 2 of the Stipulation provided that "[t]he Court shall retain jurisdiction over the parties to this stipulation for purposes of enforcing the Settlement Agreement and for purposes of deciding any claim of breach of the Settlement Agreement."[35]  The Court's agreement to retain jurisdiction was necessary.[36]

---

[32]

The claims asserted by Patton were asserted on its own behalf, not on behalf of the LAPs or anyone else.

[33]

That is not to say that any settlement that in fact breached Patton's professional obligations to its clients or former clients would be proper.  It is only to say that it would be a matter for professional disciplinary proceedings or some lawsuit between the LAP Representatives and Patton, not this lawsuit.

[34]

Fed. R. Civ. P. 41(a)(1)(A)(ii).

[35]

DI 81 ¶ 2.

[36]

*See Kokkonen*, 511 U.S. at 381-82.

In these circumstances, the relief the movants would seek in the event they intervened would not vindicate or protect any "interest" they assert.  If the Court were to grant reconsideration and, on reconsideration, to withhold its approval of the Rule 41 Stipulation, it would be open to Patton and Chevron to dismiss the action anyway by a stipulation that did not require court approval—that is, to eliminate any provision for retention of jurisdiction to enforce the Settlement Agreement and otherwise to settle on exactly the same terms.[37]  And that would leave movants in exactly the same position of which they here complain:

- Patton long ago issued its statement of regret.

- Any breach of Patton's duty of loyalty occurred long ago and never could have been remedied in this lawsuit, whatever else might have flowed from it in other fora.

- Patton's agreement to cooperate in discovery would be unchanged and, as it always was, subject to its professional obligations and, in addition, to its covenants to provide the LAPs with notice of any discovery requests and an opportunity to assert any privilege and work product claims they might have.

In short, intervention not only is unnecessary to protect any legitimate interest of any of the movants, it would not do so in any event.

---

[37] Indeed, that is exactly what occurred in one of the cases movants rely upon, *Black Rock City LLC v. Pershing Cty. Bd. of Comm'rs*, No. 3:12-cv-00435 (D. Nev.).  One of the defendants moved for summary judgment.  The parties subsequently entered into a stipulation of dismissal that called upon the district court to retain jurisdiction post-dismissal for various purposes.  The district court evidently objected to the terms of the settlement.  The parties then filed a second stipulation of dismissal that did not contemplate retention of jurisdiction.  The district court then granted summary judgment and refused to approve the first stipulation without even mentioning the second.  *Black Rock City*, 2014 WL 40755 (D. Nev. Jan. 6, 2014).  The Ninth Circuit reversed.  It pointed out that the filing of the second stipulation, signed by all of the parties, terminated the action pursuant to Rule 41(a)(1)(A)(ii) and thus ended the district court's jurisdiction.  The subsequent grant of summary judgment and refusal to approve the first stipulation therefore were improper. *Black Rock City LLC v. Pershing Cty. Bd. of Comm'rs*, 637 F. App'x 488 (9th Cir. 2016).

2.      *There Is Nothing in Which to Intervene*

Even if Rule 24(a) could be stretched to characterize movants as meeting its requirements, they nevertheless would have no right to intervene.

As a practical matter, this lawsuit between Patton and Chevron ended on May 7, 2014 with the entry of the May 7, 2014 order.  An application to intervene presupposes the continued existence of a lawsuit over which the court has jurisdiction and, in consequence, that a motion to intervene in a terminated case must fail.  As the Second Circuit has said:

> "Intervention is a procedural means for entering an existing federal action.  *See Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005).  The Federal Rules of Civil Procedure 'do not extend or limit the jurisdiction of the district courts.'  Fed R. Civ. P. 82.  That is, Rule 24 does not itself provide a basis for jurisdiction.  Accordingly, 'since intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a "nonexistent" law suit.'  *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965).  Indeed, this rule is so deeply entrenched in our jurisprudence that it is an axiomatic principle of federal jurisdiction in every circuit to have addressed the question.  *See, e.g.*, *Hofheimer v. McIntee*, 179 F.2d 789, 792 (7th Cir. 1950) ('An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit.') (quotation marks omitted); *see also Canatella*, 404 F.3d at 1113 ('Because Rule 24 cannot extend federal jurisdiction[,] . . . intervention as of right cannot be used to circumvent *Younger [v. Harris*, 401 U.S. 37 (1971)] abstention.'); *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974) ('By its very nature intervention presupposes pendency of an action in a court of competent jurisdiction.'); *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926) (explaining that an existing lawsuit within the court's jurisdiction is a prerequisite of intervention); *Brictson Mfg. Co. v. Woodrough*, 284 F. 484, 487 (8th Cir. 1922) (same)."[38]

To be sure, the May 7, 2014 order retained jurisdiction.  But it did so only for the very limited purpose "of enforcing the Settlement Agreement and for purposes of deciding any claim

---

[38]      *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160-61 (2d Cir. 2012).

of breach of the Settlement Agreement."  No request to enforce or to decide any claim of breach of the Settlement Agreement ever has been made.  Nothing is pending before this Court into which movants may intervene.[39]  Movants may not expand the limited scope of the retention of jurisdiction to embrace their claim that Patton breached alleged ethical duties to the LAP Representatives by agreeing to some of the provisions of the Settlement Agreement.

*   *   *

For all of the foregoing reasons, intervention is denied.[40]

B.    *The Merits*

The denial of intervention is sufficient to dispose of this motion.  But it is useful to address the merits briefly both because they are somewhat intertwined with the intervention issue and to foreclose any possibility of remand.

---

[39]

We leave for another day, should that day ever dawn, the question whether movants might be able to intervene in a proceeding to enforce, or to adjudicate any claim of breach of, the Settlement Agreement, assuming *arguendo* that any such intervention motion otherwise satisfied Rule 24.

[40]

Even were the requirements for intervention as of right satisfied, we would condition it on movants first producing for a deposition in New York their lead Ecuadorian counsel, upon whose declaration their motion to intervene rests heavily, and producing suitably in advance of such a deposition all documents appropriate thereto, including relevant documents located in Ecuador.  This Court's findings in the NY Case amply document mendacity and corruption on the part of Fajardo.  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014) (*passim*), *aff'd*, 833 F.3d 74 (2d Cir. 2016).  They document also the movants' refusal to produce documents relevant to the NY Case from Ecuador and Fajardo's role in attempting to thwart orders for their production.  *Chevron Corp. v. Donziger*, 296 F.R.D. 168 (S.D.N.Y. 2013), *reconsideration denied*, 2014 WL 2608852 (S.D.N.Y. Mar. 4, 2014).  For the reasons set forth by Chevron, testimony by Fajardo, enlightened by relevant documents, would be necessary to permit proper evaluation of his declaration, which is virtually the sole factual support for the motion to intervene.  DI 87, at 11-17.

As unusual as this motion first may appear, it is not—to borrow a phrase—our first rodeo with these contestants.  To mix the metaphor, this well might be called Rule 41 Redux.  And it involves almost a 180-degree change of position by movants.

As noted, the NY Case involved fraud and other claims by Chevron against Donziger and the LAP Representatives, as well as a RICO claim against Donziger.  At the outset of the NY Case, however, there were additional defendants, most notably for present purposes a Colorado consulting firm known as Stratus and a couple of its personnel.  In due course, Chevron settled with Stratus.  The settling parties sought court approval of the settlement and the dismissal stipulation which, unlike here, required court approval under Rule 41(a)(2) because the stipulation was not signed by all of the parties.[41]  Donziger and the LAP Representatives claimed that the settlement was a product of unethical conduct by Chevron.  While they did not object to Chevron releasing the Stratus defendants, they objected to the Court approving the settlement and sought to have the Court refer it to professional disciplinary and law enforcement authorities.  In consequence, we addressed the scope of the Court's discretion under Rule 41(a)(2):

> "[T]he scope of the Court's discretion in granting such an order, especially where, as here, the dismissal of those claims is with prejudice, is quite limited.  This is a private agreement among private parties, who have a perfect right to settle their private lawsuit as they see fit.  It is not, for example, a class action or other specialized form of litigation in which the Court's role is more expansive in order to protect the interests of absent class members or others not before the Court.  Thus, '[t]he purpose of the grant of discretion under Rule 41(a)(2) that permits the district court judge to consider whether dismissal is appropriate under the circumstances of the case is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.'

---

[41]     The situation here, of course, is different.  Here, Patton and Chevron could have stipulated to dismissal of the action pursuant to Rule 41(a)(1)(A)(ii).  As discussed above, they sought court approval only to the extent of the Court's retention of jurisdiction for limited purposes.

"In this case, no one suggests that Chevron and the Stratus Defendants can or should be prevented from dismissing the claims they have asserted against each other on whatever terms suit them.  The non-settling defendants have not established any legal prejudice to themselves by reason of the dismissal of those claims.  For that matter, they concede, at least in theory, that the settling parties are free to release one another on all of those claims.  So only three matters remain for discussion—(1) the non-settling defendants' contention that this Court should consider the substantive terms of the settlement for the purpose of concluding that there is reason to believe that the settling parties are guilty of professional or criminal misconduct by entering into the settlement, (2) Chevron's contention that the Court should do so for the purpose of declaring that the substantive terms of the settlement are entirely appropriate, and (3) the failure of the settling parties thus far to submit the final proposed stipulation of dismissal.

"As to the first two points, the Court declines both invitations for the same reason. The non-settling defendants are correct in asserting that the Court's authority does not extend to approving, disapproving, or otherwise passing on the substantive terms of a private settlement of private claims in this ordinary civil litigation.  As the non-settling defendants have not established any legal prejudice flowing from the dismissal, the Court's role under Rule 41 is at an end.  The Court declines to express any view as to the propriety of the settlement agreement terms, which is not to be taken as an implication of anything at all on the point."[42]

Here, movants have reversed position.[43]  Whereas they formerly claimed that the

Court lacked authority to approve, disapprove or otherwise pass on the substantive terms of a private

---

[42]

*Chevron Corp. v. Donziger*, No. 11-cv-691 (LAK), 2013 WL 1481813, at *4 (S.D.N.Y. Apr. 8, 2013) (footnote omitted).

[43]

Their change in position is ironic in view of movants' unsuccessful attempts to assert judicial estoppel against Chevron in the NY Case.  *See, e.g.*, *Chevron Corp. v. Donziger*, 833 F.3d at 127-29.   Judicial estoppel applies "to situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced," although it typically is applied only in "situations where the risk of inconsistent results with its impact on judicial integrity is certain."  *Id.* at 128 (internal quotation marks and citations omitted).  Movants took the position in the NY Case that the terms on which private parties settle private litigation are none of the court's business and that the Court therefore should not determine that the Chevron–Status settlement agreement was appropriate.  We adopted that position in the NY Case.  Now, however, they urge the opposite position.  As there are so many other grounds upon which to reject their present motion, however, we need not decide whether they are judicially estopped to reverse position in this regard.

settlement, they now ask that it do precisely that in order to conclude that the Settlement Agreement breached Patton's ethical obligations and that the Rule 41 Stipulation should be vacated.  Moreover, the legal position here differs.  In the NY Case, court approval of the dismissal as to the Stratus defendants was indispensable under Rule 41(a)(2).  Here, on the other hand, Patton and Chevron unquestionably had the right to dismiss the case without court approval.  They quite clearly sought approval for nothing more than retention of jurisdiction for the purpose of enforcing the Settlement Agreement in the event that enforcement ever proved necessary.

Movants were right the first time to the extent they argued that this Court's authority in approving a Rule 41 dismissal in a private settlement of private claims in ordinary civil litigation does not typically extend to passing on the terms on which the parties have agreed.  There is one narrow exception, which was in play in the Stratus settlement in the NY Case.  A court has discretion under Rule 41(a)(2) to protect any non-settling parties from legal prejudice that might flow from a settlement by other parties.[44]  But that exception did not apply in the NY Case, and it has no bearing here for the simple reason all of the parties in this case signed the Rule 41 Stipulation.

To be sure, a court asked to retain post-dismissal jurisdiction for the purpose of enforcing a settlement agreement is obliged to exercise its discretion in determining whether retention of jurisdiction is advisable.[45]  Moreover, a court that elects to retain such jurisdiction generally is obliged to enforce the bargain the parties made.  But that would not be the case to the

---

[44]

*Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir. 1961); *Chevron Corp.*, 2013 WL 1481813, at *4.

[45]

*See Kokkonen*, 511 U.S. at 381.

extent that enforcement of any term of the parties' agreement would be unlawful, materially impair legally protected interests of a non-party, or be inappropriate for other extraordinary reasons.[46] Indeed, in this case the Settlement Agreement specifically contemplates the possibility that a court would find one or more of its provisions "invalid, void or unenforceable."[47]   Accordingly, we conclude that it would be inappropriate to express any view with respect to the propriety of so much of the Settlement Agreement as against which movants inveigh.  If movants contend that any actions that Patton already has taken—notably its statement of regret and its alleged withdrawal without notice—breached professional obligations Patton owed to any of them, they have ready recourse to the authorities charged with policing the professional conduct of lawyers.  And if the future brings any proceeding to this Court under its retained jurisdiction in which the LAP Representatives claim a legally protectable interest, they will be free to seek to intervene in that procedure for the purpose of asserting their position.

*Conclusion*

For the foregoing reasons, the motion [DI 82] to intervene for the purposes of seeking reconsideration of this Court's order approving the parties' Stipulation and Order of Dismissal with Prejudice is denied in all respects.  In the event there were a right to intervene, the Court would deny

---

[46]

*See Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000).

[47]

DI 81-1 ¶ 21.

reconsideration of the order and, in the alternative, on reconsideration would adhere to the order as entered.

SO ORDERED.

Dated:      December 7, 2016

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)